TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-99-00217-CV






Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and

John Cornyn, Attorney General of the State of Texas, Appellants


v.


San Antonio SMSA Limited Partnership, Appellee


&





NO. 03-99-00218-CV



Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and

John Cornyn, Attorney General of the State of Texas, Appellants


v.


Dallas SMSA Limited Partnership, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NOS. 97-11831 & 97-09713, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING 





 The opinion and judgment issued by this Court on January 6, 2000, are withdrawn,
and the following opinion is substituted in lieu thereof. These companion cases, consolidated for
appeal, concern the taxability of line-engineering services required to reconfigure mobile
telephone networks. The Comptroller contends the services are taxable as "part of the sale" of
telecommunications equipment because the services and equipment were sold under one contract
of sale. The taxpayers argue that the line-engineering services were "readily separable" from the
sale of the equipment and that only the equipment sale is subject to the imposition of sales tax. 
In both causes the parties submitted competing motions for summary judgment; the trial court
granted summary judgment in favor of both taxpayers and denied the Comptroller's motions. We
will affirm the trial court's judgments.


BACKGROUND


 Dallas SMSA and San Antonio SMSA Limited Partnerships (taxpayers) provide
mobile radio service in various metropolitan areas, including Dallas and San Antonio. Their
networks include a mobile telephone switching office, transmission facilities, and cell sites, all
designed to provide service to cellular telephone customers. The mobile telephone switching
office has been called a "traffic cop," as it controls the switching equipment needed to
interconnect with the land telephone network, the actions of the cell site, and the many actions of
the mobile units. It is the goal of the taxpayers to coordinate and update the mobile telephone
switching office without interference noticeable to its customers. All network equipment must be
configured and interconnected to work together without interruption, even when equipment is
being added or updated. The professional engineering services at issue consist of advice on how
to reconfigure the network without disrupting service.

 The taxpayers sought to replace or add equipment to a cell site or switch location. 
They purchased mobile telephone switch office equipment, cellular equipment, electronic
switching equipment, and related peripherals. Because no two cell sites or switches are exactly
alike, the taxpayers first obtained line-engineering services to determine the specifications for new
equipment that would interconnect with their existing telecommunications system. The complexity
of each cell site or switch necessitates special engineering services to determine the requirements
for a particular site.

 According to the taxpayers, there are four vendors of new switching equipment,
each of whom also provides the line-engineering services at issue in this appeal. Occasionally the
taxpayer is able to perform these engineering services in-house; however, that was not done here.
According to the affidavit of Ken Dickens, a senior manager for Southwestern Bell Mobile
Systems, Inc., the engineering services are provided on a "stand-alone" basis; that is, the taxpayer
is not required to purchase the engineering services from the vendor who supplies the equipment,
and the price of the equipment is not affected by acquiring the engineering services from a
different vendor. Engineering services may also be required when moving network equipment,
apart from any purchase.

 In this instance AT&T supplied both the equipment and the engineering services. 
The taxpayers first purchased line-engineering services from AT&T's engineering divisions in
Chicago and St. Louis. After this assessment was done, they purchased new equipment from the
manufacturing division of AT&T in Columbus, Ohio. AT&T separately stated the charges for
the engineering services and the equipment to each taxpayer, but an integrated invoicing system
included the charges on a single invoice. The Comptroller insists that because of this single
invoice, the engineering services were "part of the sale" of the equipment, subjecting the entire
transaction to sales tax. The taxpayers insist that these line-engineering services are separable
from the sale of the equipment and that each transaction should be considered independently for
the imposition of sales tax.

 After an audit the Comptroller assessed sales tax of $86,336.06 on Dallas SMSA
for the purchase of engineering services for the period January 1, 1989 through August 31, 1992. 
Likewise the Comptroller assessed sales tax of $8,601.29 on San Antonio SMSA for the purchase
of engineering services during the period January 1, 1989 through September 30, 1992. The
taxpayers paid the sales tax under protest and now seek a refund of the amounts paid plus interest.

 When both sides move for summary judgment and the trial court grants one motion
and denies the other, we review the summary judgment proof presented by both sides and
determine all questions presented. See Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex.
1997). If we find error, we must render the judgment the trial court should have rendered. See
id.


DISCUSSION

 The legislature has imposed a sales tax on certain services in section 151.0101(a)
of the Tax Code; engineering services are not included in this list. See Tex. Tax Code Ann.
§ 151.0101(a) (West Supp. 2000). Instead, the Comptroller seeks to assess a sales tax because
these services were a "part of the sale" of the telecommunications equipment purchased by the
taxpayers. See Tex. Tax Code Ann. § 151.007(b) (West Supp. 2000) (total amount for which
taxable item is sold includes service that is part of sale). When a nontaxable service is bundled
with a taxable sale or service, we apply the "essence-of-the-transaction" doctrine to determine
whether the service is a part of the sale. See Sharp v. Direct Resources for Print, Inc., 910
S.W.2d 535, 538-39 (Tex. App.--Austin 1995, writ denied) (purpose of "essence-of-the-transaction" test is to determine whether ultimate object of sale is subject to sales tax); see also
Bullock v. Statistical Tabulating Corp., 549 S.W.2d 166, 167 (Tex. 1977) ("essence-of-the-transaction" test used to determine if sale of computer cards containing raw data is taxable as
tangible personal property); Comptroller of Pub. Accounts v. Austin Multiple Listing Serv., Inc.,
723 S.W.2d 163, 165 (Tex. App.--Austin 1986, no writ) ("essence" test applied to sale of real
estate listing books containing raw data to determine if books are tangible personal property or
nontaxable service); First Nat'l Bank v. Bullock, 584 S.W.2d 548, 550 (Tex. Civ. App.--Austin
1979, writ ref'd n.r.e.) ("essence" test to determine if payments made for license to use computer-programming tapes are taxable as tangible personal property); Williams & Lee Scouting Serv., Inc.
v. Calvert, 452 S.W.2d 789, 792 (Tex. Civ. App.--Austin 1970, writ ref'd) ("essence" test applied
to geographical scouting reports for oil companies). If the real object of a mixed transaction is
the purchase of equipment which is taxable, and the service element is incident to that purchase,
the entire transaction is taxable. See Direct Resources, 910 S.W.2d at 538; Statistical Tabulating
Corp., 549 S.W.2d at 168. On the other hand, if the essence of the transaction is the purchase
of a nontaxable service, which incidentally includes the purchase of some other service or
equipment that is taxable, the entire transaction is nontaxable. See Direct Resources, 910 S.W.2d
at 538; Austin Multiple Listing Serv., Inc., 723 S.W.2d at 165; First Nat'l Bank, 584 S.W.2d at
550.

 The transaction at issue in this appeal seems to fall in neither of these categories. 
When the purchase of a nontaxable service is combined with the purchase of taxable property, but
each transaction is independently desired and independently provided, we have a mixed transaction
in which neither element is "incident" to the other. In determining the taxability of this kind of
transaction, we are guided by the thoughtful analysis of the Rhode Island Supreme Court in
determining the taxability of an almost identical purchase involving engineering services required
to assist the buyer in purchasing telecommunications equipment. See New England Tel. & Tel.
Co. v. Clark, 627 A.2d 298 (R.I. 1993). We begin by noting the similarity of the Texas and
Rhode Island tax statutes: "Sales price means the total amount for which tangible personal
property is sold . . . including . . . any services that are a part of the sale." R.I. Gen. Laws § 44-18-12 (a)(1) (West 1999). The Rhode Island case law concerning mixed transactions is also
similar to our "essence-of-the-transaction" doctrine in Texas: When a nontaxable service is the
main item purchased, and the property received is incident to that service, the entire transaction
is deemed not to be taxable. See Clark, 624 A.2d at 301; accord Direct Resources, 910 S.W.2d
at 539; see also Sharp v. Cox Tex. Publications, Inc., 943 S.W.2d 206, 210 (Tex. App.--Austin
1997, no pet.); Austin Multiple Listings Serv., Inc., 723 S.W.2d at 165. When tangible property
is the main item purchased and the nontaxable service is incident to the receipt of that property,
the entire transaction is taxable. See Clark, 624 A.2d at 301; accord Sharp v. Park 'N Fly of
Texas, Inc., 969 S.W.2d 572, 574-75 (Tex. App.--Austin 1998, pet. denied) (transportation costs
incident to taxable service of parking also taxable).

 The Rhode Island court found that the purchase of engineering services and
telecommunication equipment at issue in Clark did not fit into either of these "essence-of-the-transaction" categories. See Clark, 624 A.2d at 302. Instead it found that the transaction better
fit into a third category in which the two elements of a mixed transaction involving service and
tangible property are "readily separable": "[W]hen there is a fixed and ascertainable relationship
between the value of the article and the value of the services rendered, and each is a consequential
element capable of a separate and distinct transaction, then the elements must be analyzed as
separate transactions for tax purposes . . . ." Id. at 301.

 The mixed transaction we consider in this appeal seems to fall in this category:
neither part of the transaction is incident to the other and each has separate value. Indeed it
cannot be said that there is but one "essence" to this transaction between the taxpayers and
AT&T. The real object of the transaction was both the advice obtained through the line-engineering services and the resulting equipment that was needed to update and interface with the
existing switching facilities. The cost of the two elements of the mixed transaction are distinct
and identifiable. When a mixed transaction is "readily separable" into two elements of equal
value, we adopt the simple result reached in Clark: "[T]he elements must be analyzed as separate
transactions for tax purposes . . . the property aspect of the transaction would be taxable and the
service aspect of the transaction would not be taxable." Id. at 301.

 Although the combination of services and equipment involved in this appeal appears
to be "readily separable," the Comptroller urges that because the two transactions are invoiced
on one contract of sale they must be treated as one taxable transaction. Were we to adopt this
one-contract theory, engineering services would be taxable when performed by one vendor who
later supplies equipment but not taxable when performed by another vendor. Or, the services
would be taxable if a vendor has an integrated billing system, but not taxable if the same vendor
sends a separate contract for each purchase. Such a theory would inevitably lead to manipulation: 
"Please wait and bill me separately for the services I am purchasing."

 The Comptroller's interpretation that services billed in the same contract as the sale 
of equipment are part of the sale is unreasonable because it would result in an uneven application
of the legislature's stated tax policy. Recognizing that its one-contract theory is subject to this
criticism, the Comptroller emphasizes that its interpretation of section 151.007(b) relies on two
factors not one: a service is "part of the sale" when it is sold under the same contract of sale and
is directly related to the taxable item. The Comptroller relies on the fact that these line-engineering services were directly related to the equipment purchased under the single contract
of sale to subject the services to sales tax under section 151.007(b). Even adding a second prong
to the one-contract theory does not overcome the potentially irrational application of this
interpretation of section 151.007(b). 

 The taxpayers note that the Comptroller's own rules recognize as nontaxable any
service, provided together with the sale of a taxable service, if it is distinct and identifiable, if it
can be provided on a stand-alone basis, and if it is not included in the services taxed under section
151.0101(a). See 34 Tex. Admin. Code § 3.357 (1999) (describing unrelated services that are
deemed nontaxable). The factors listed in the Comptroller's rule are remarkably similar to the
factors relied on in Clark to identify services that are readily separable from the sale of equipment. 
See Clark, 624 A.2d at 300-01. The Comptroller tries to limit the applicability of these factors
to the sale of unrelated services sold together with a taxable service and would apply a different
rule to services sold with tangible property. The Comptroller gives no rationale for construing
services that are part of the sale of equipment more strictly than services that are part of the sale
of taxable services. Tax statutes must be construed strictly against the taxing authority and
liberally in favor of the taxpayer. See Statistical Tabulating Corp., 549 S.W.2d at 169. The
Comptroller's departure here from its own rule defining unrelated services that are deemed
nontaxable attempts to construe section 151.007(b) liberally in favor of the taxing authority. We
hold that the Comptroller's construction of section 151.007(b) is unreasonable.

 The line-engineering services at issue here were performed to determine what
equipment was needed to enhance the mobile telephone switching office and how to integrate the
new equipment without disrupting service; these services had value that was not merely incident
to the purchase of the new equipment. The taxpayers note the stand-alone nature of these
engineering services; they could have been performed by someone other than AT&T, either
another vendor or an in-house employee. Indeed a totally separate department of AT&T,
unrelated to sales and located in a different city, performed the engineering services. There was
one contract of sale, but a charge for line-engineering services was listed separately from the cost
of the equipment. (1) There was a need for the engineering assessment that was as important to the
taxpayers as the equipment itself. Where the services are distinct and identifiable, the existence
of a single contract does not make the engineering services incident to the purchase of the
equipment. We hold that neither element of this mixed transaction was incident to the other. The
taxpayers had two real objectives: to learn from the line-engineering services how to update their
network without disrupting service to their customers, and to purchase equipment that would both
update and interconnect smoothly with their existing facilities. These two transactions were
"readily separable" and must be analyzed as distinct transactions for sales tax purposes.

 The existence of a single invoice or a single contract will not affect taxability. 
When "readily separable" transactions have been provided, each transaction must be analyzed
independently to determine if a sales tax shall be imposed.


CONCLUSION


 Because we determine that the taxpayers' purchase of line-engineering services was
a readily separable transaction from its purchase of equipment, we hold that the engineering
services are not "a part of the sale" of tangible personal property and consequently are not subject
to taxation under section 151.007(b). Therefore, we affirm both summary judgments in favor of
the taxpayers.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed on Both Causes

Filed: February 3, 2000

Publish
1. In Direct Resources the Comptroller argued that the taxable printing of envelopes was
readily separable from the nontaxable direct mail service because it was separately invoiced on
the same bill, as were the line-engineering services at issue here. See Direct Resources, 910
S.W.2d at 540. In that case we held that the taxable service was merely incident to the nontaxable
service, hence the entire transaction was nontaxable. See id. at 540-41.



the sale of a taxable service, if it is distinct and identifiable, if it
can be provided on a stand-alone basis, and if it is not included in the services taxed under section
151.0101(a). See 34 Tex. Admin. Code § 3.357 (1999) (describing unrelated services that are
deemed nontaxable). The factors listed in the Comptroller's rule are remarkably similar to the
factors relied on in Clark to identify services that are readily separable from the sale of equipment. 
See Clark, 624 A.2d at 300-01. The Comptroller tries to limit the applicability of these factors
to the sale of unrelated services sold together with a taxable service and would apply a different
rule to services sold with tangible property. The Comptroller gives no rationale for construing
services that are part of the sale of equipment more strictly than services that are part of the sale
of taxable services. Tax statutes must be construed strictly against the taxing authority and
liberally in favor of the taxpayer. See Statistical Tabulating Corp., 549 S.W.2d at 169. The
Comptroller's departure here from its own rule defining unrelated services that are deemed
nontaxable attempts to construe section 151.007(b) liberally in favor of the taxing authority. We
hold that the Comptroller's construction of section 151.007(b) is unreasonable.

 The line-engineering services at issue here were performed to determine what
equipment was needed to enhance the mobile telephone switching office and how to integrate the
new equipment without disrupting service; these services had value that was not merely incident
to the purchase of the new equipment. The taxpayers note the stand-alone nature of these
engineering services; they could have been performed by someone other than AT&T, either
another vendor or an in-house employee. Indeed a totally separate department of AT&T,
unrelated to sales and located in a different city, performed the engineering services. There was
one contract of sale, but a charge for line-engineering services was listed separately from the cost
of the equipment. (1) There was a need for the engineering assessment that was as important to the
taxpayers as the equipment itself. Where the services are distinct and identifiable, the existence
of a single contract does not make the engineering services incident to the purchase of the
equipment. We hold that neither element of this mixed transaction was incident to the other. The
taxpayers had two real objectives: to learn from the line-engineering services how to update their
network without disrupting service to their customers, and to purchase equipment that would both
update and interconnect smoothly with their existing facilities. These two transactions were
"readily separable" and must be analyzed as distinct transactions for sales tax purposes.

 The existence of a single invoice or a single contract will not affect taxability. 
When "readily separable" transactions have been provided, each transaction must be analyzed
independently to determine if a sales tax shall be imposed.


CONCLUSION


 Because we determine that the taxpayers' purchase of line-engineering services was
a readily separable transaction from its purchase of equipment, we hold that the engineering
services are not "a part of the sale" of tangible personal property and consequently are not subject
to taxation under section 151.007(b). Therefore, we affirm both summary judgments in favor of
the taxpayers.