KAHN, J.
American Telephone and Telegraph Company (AT&T) appeals a final judgment upholding a sales tax assessment on its sales of systems engineering services. AT & T raises two points on appeal. Under the first point, AT & T argues the trial court erred in concluding these sales of systems engineering services were taxable. Under the second point on appeal, AT & T argues that, assuming these sales are taxable, the trial court should not have required AT & T to pay a penalty on the tax assessment. Because we find the trial court properly applied the pertinent statute, we affirm the trial court’s determination regarding the taxability of the sales of engineering services in this case. In addition, we affirm without discussion the trial court’s assessment of a penalty.
I. Brief Factual Background
In May 1993, the Department of Revenue (Department) assessed sales and use tax, plus penalties and interest, for a total amount of $10,219,597.94, upon AT & T for the audit period June 1, 1983, through December 30, 1988. AT & T disputed the assessment of tax, in the amount of $4,263,322.40, on its sales of systems engineering services to BellSouth Telecommunications, Incorporated (BellSouth). The services at issue here were sold together with telecommunications equipment in what are known as “engineer, furnish, and *666 install” or EFI orders, and AT & T separately stated the charges for the services and the charges for the equipment in these EFI orders. Following a non-jury trial, the trial judge entered a final judgment against AT & T for the amount of the assessment plus interest and a penalty.
In the final judgment, the trial judge made extensive findings of fact. On appeal, AT & T has not specifically challenged these factual findings. To the contrary, AT & T asserted in its briefs and at oral argument that this case involves no disputed facts. Instead, AT & T has presented its argument on appeal as an issue of law, i.e., whether the trial court applied the appropriate “test” in determining the taxability of the sales of engineering services in this case.
II. “Tests” and the Florida Statute
AT & T argues that the trial court did not apply the appropriate test in determining whether its sales of engineering services were subject to tax. Specifically, AT & T argues that the trial court should have applied one of two tests. According to AT & T, the first test has been applied in Florida and focuses on whether the customer can buy the equipment alone or whether the customer must also buy the services when purchasing the equipment. See Department of Revenue v. B & L Concepts, Inc., 612 So.2d 720 (Fla. 5th DCA 1993). AT & T further asserts that the second test, the “real object” test, has been followed by courts outside Florida in similar cases and focuses on the customer’s intent in the transaction: if the customer intends to procure both equipment and services and the two are separable, then the sale of the equipment is taxed but the sale of the services is not taxed. See New England Tel. & Tel. Co. v. Clark, 624 A.2d 298 (R.I.1993); see also Rylander v. San Antonio SMSA Ltd. Partnership, 11 S.W.3d 484 (Tex.Ct.App.2000). AT & T argues that under either test, the services at issue here are not taxable.
We find that, rather than applying one of these “tests,” the trial court simply, and properly, applied the pertinent statute, section 212.02(4), Florida Statutes (1983), to the sales in this case. Both parties agree that the systems engineering work sold here constituted “services.” In general, services are not taxable. See B & L, 612 So.2d at 721 (“In summary, Chapter 212, Florida Statutes, The Florida Revenue Act of 1949, provides for a sales tax on the sale of tangible personal property and certain other transactions but not on services.” (footnote omitted)). Section 212.05(l)(a)l.a., Florida Statutes (1983), provides that the sale of tangible personal property at retail by anyone in the business of making such sales is a taxable privilege and, for the exercise of such privilege, imposes a tax at the rate of 5% (6% after January 1, 1988) of the sales price on each sale. Section 212.02(2), Florida Statutes (1983), defines “sale” as including “[a]ny transfer of title or possession, or both, exchange, barter, lease, or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration.” Most importantly, section 212.02(4) defines “sales price” in pertinent part as follows:
[TJhe total amount paid for tangible personal property, including any services that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller, without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service cost, interest charged, losses, or any other expense whatsoever....
(emphasis added). Thus, pursuant to Florida’s taxing scheme, some services are taxable and the Legislature has provided the applicable “test”: “any services that are a part of the sale, valued in money, whether paid in money or otherwise” are taxable.
*667 The trial court in this case made extensive factual findings regarding whether the services at issue here were “part of the sale” of the equipment. In particular, the court made specific findings regarding telephone systems engineering and the provision of services to a telephone central office; EFI orders and telephone switching equipment; the installation or upgrade of certain unique switches by AT & T; the proprietary software program prepared by AT & T to enable systems engineers to analyze and respond to telephone equipment orders; and the link between the price of equipment and the price of engineering services sold under contract commitments between AT & T and BellSouth. Based on its detailed findings, the court concluded “[t]he sale of the engineering was inextricably intertwined with the sales of the telecommunication equipment in the transactions.” The court thus concluded the services at issue were “part of the sale” of the equipment. We find the trial court properly applied the statute in this case and, for the reasons explained below, we reject the treatment preferred by AT & T.
III. Florida Precedent: Whether Services Must be Purchased with Equipment
Regarding the first proposed test, AT & T urges this court to follow AT & T’s view of Florida precedent and focus on whether the customer can buy the equipment alone or whether the customer must also buy the services when purchasing the equipment. AT & T argues that because BellSouth did not have to purchase the engineering services with the equipment, the sale of those services should not be taxed.
According to the statutory definition of “sales price,” however, the “services that are a part of the sale” language is not limited to only those services that must be purchased with tangible personal property, in this case equipment. “In statutory construction, case law clearly requires that legislative intent be determined primarily from the language of the statute.” S.R.G. Corp. v. Department of Revenue, 365 So.2d 687, 689 (Fla.1978). “The reason for this rule is that the Legislature must be assumed to know the meaning of the words and to have expressed its intent by the use of the words found in the statute.” Id. Given that the Legislature chose not to limit the sales tax to services that must be purchased with tangible personal property, we have no authority to do so.
In addition, the case AT & T relies on is distinguishable. Specifically, in support of the argument that this test should apply here, AT & T cites Department of Revenue v. B & L Concepts, Inc., 612 So.2d 720 (Fla. 5th DCA 1993). B & L involved a vendor who rented household appliances, furniture, and home entertainment products. See B & L, 612 So.2d at 721. With these rentals, the vendor charged three fees: “(1) a late fee for the tardy return of rental property after expiration of the agreed rental term, (2) an order processing fee to recoup the cost of verifying reference information and (3) a delivery fee for the delivery of the rental property to a location away from the vendor’s (lessor’s) premises.” Id. The Department asserted that the vendor should collect and pay sales tax on all three fees because they constituted “services that are part of a sale.” Id. The trial court entered final summary judgment in favor of the vendor holding that section 212.05, Florida Statutes, “does not authorize the imposition of a sales tax on the late charges, the delivery charges or the order processing fees.” Id. On appeal, the Fifth District affirmed in part and reversed in part, finding that the Department could impose and collect sales tax on the order processing fees, but not on the late fees or delivery fees. See id. at 721-22. The court explained its decision as follows:
We hold that in the context of this problem, the proper line of demarcation is that if service charges or fees incidental to the sale or lease are imposed at the option of the vendor or lessor, those *668 service charges or fees are a part of the “sales price” and are subject to the sales tax, but if such service charges or fees are separately itemized and applied at the sole option or election of the vendee or lessee, or can be avoided by decision or action on the part of the vendee or lessee alone, then those charges and fees are only incidental to the sale, are not part of the “sales price” and are not subject to the sales tax.
This principle applies to the three areas of dispute in this case as follows: (1) the vendee or lessee can avoid the late charges by timely returning the rental property in accordance with the rental agreement, therefore, such late fees are not subject to sales tax; (2) the vendor in this case requires verification of reference information and requires in every case an “order processing fee” to reimburse the cost of this aspect of the vendor’s business, therefore, the vendor-mandated order processing fee is, in substance, a part of the “sales price” and is subject to sales tax; (3) the vend-ee’s officer’s uncontradicted affidavit, considered by the trial court on summary judgment, states that the delivery fee is not mandated by the vendor (lessor) but is provided to customers who desire that service, therefore, such delivery fees, while incidental to the “sale,” are not part of the “sales price” and are not taxable....
Id. at 721-22. Thus, according to B & L, certain services sold with tangible personal property are taxable, i.e., those “service charges or fees incidental to the sale or lease [that] are imposed at the option of the vendor or lessor.... ” Id. at 721 (emphasis added).
The B &L court also made the following statements in a footnote with respect to the nontaxability of the delivery fee:
The vendor (lessor) should not have to collect sales tax on this “service” merely because he sells or leases the object when an independent firm which provides this delivery “service” is not required to collect such tax.
Id. at 722; see Florida Hi-Lift v. Department of Revenue, 571 So.2d 1364, 1367 (Fla. 1st DCA 1990) (finding that pickup and delivery charges were “incident to a ‘sale’ ” and, therefore, not taxable). AT & T cites this footnote and the Florida Hi-Lift case and suggests the trial court in this case “recognized that BellSouth had no legal or contractual requirement to purchase services when ordering equipment from AT & T.” AT & T argues, therefore, that “[t]he fact that the customer can elect to avoid incurring systems engineering charges when ordering equipment is enough to show that the services are ‘not part of the sale of tangible personal property.’ ”
AT & T’s argument fails to acknowledge that the test set forth in B & L applies only to transactions in which the sale of services is incidental to the sale of property. This is not the case here, however, because the trial court specifically found as fact that the services “were clearly not ‘incidental’ to the sale of the goods.” See Black’s Law Dictionary 765 (7th ed.1999) (defining “incidental” as “[sjubordinate to something of greater importance; having a minor role”). Indeed, the services sold here constitute much more than the mundane, ordinary “service charges or fees” involved in B & L.
IV. Cases from Other States: The “Real Object” Test and Whether the Services are “Readily Separable” from the Equipment
Regarding the second proposed test, AT & T urges this court to follow cases from other states and adopt the “real object” test. Under this test, AT & T proposes that if the customer intends to procure both equipment and services and the two are readily separable, then the sale of the equipment is taxed but the sale of the services is not taxed. In support of this argument, AT & T primarily relies on a decision from the Rhode Island Supreme *669 Court: New England Tel. & Tel. Co. v. Clark.
Returning to section 212.02(4), the “services that are a part of the sale” language in the definition of “sales price” is not limited to only those services that are not “readily separable” or that cannot be priced separately. This distinguishes this case from Clark. Specifically, although AT & T asserts that the Rhode Island case involved a statute “identical to the Florida statute,” one important difference exists: The Rhode Island statute “specifically excludes labor or services rendered in installation of the property when the charge is separately stated.” Clark, 624 A.2d at 300 (emphasis added). In upholding the trial court’s determination that the engineering services were not taxable, the Rhode Island court mentioned the fact that “[e]ngi-neering services are separately stated and separately billed.” Id. at 301. Although the court purported not to rely on this fact in finding the engineering services not taxable, it did bolster the court’s conclusion that the service aspect and property aspect of the transaction were readily separable. See id. at 302.
In the Clark opinion, the Rhode Island court posited that three categories exist for mixed transactions of goods and services:
1. The service is the main item purchased, and the property received is incidental to that service.
2. The service aspect and the property aspect of the transaction are readily separable.
3. The property is the main item purchased, and the service is incidental to the receipt of that property.
Id. at 300-01. In the first category, service is the “real object” of the transaction, so the transaction is not taxable. See id. at 301. In the third category, property is the “real object” of the transaction, so the transaction is taxable. See id. Essentially by default, the Rhode Island court determined the case before it involved the second category: “[Njeither the telecommunications equipment nor the engineering services could be described as an incidental part of this transaction.” Id. at 302. The court agreed with the trial judge’s assessment of the transaction:
Both the equipment and the engineering services could stand alone, and could be priced separately. However the raw equipment without the engineering service would be useless, as would the engineering services without the equipment. The real object of the transaction was the purchase of both aspects of the project.
Id. The court concluded that because “both the equipment and the service element constitute a distinct and separable transaction, ... the engineering services supplied by AT & T would not be subject to taxation. ...” Id. In reaching its conclusion, the court offered the following admonition:
[0]ur decisions must not be made in a vacuum, even when tax questions are involved. If we held that the services were “part of the sale” based strictly on the premise that both the services and the equipment were provided by AT & T, we would be extolling form over substance. Taxpayers would then make certain that purchases involving both a service aspect and an equipment aspect would be made from separate vendors. Those penalized would be purchasers forced to deal with the same vendor because of economic reasons because no other vendor provides the services or because they are unable to provide the services themselves. Likewise, by holding that the services are not taxable simply because they are invoiced separately would be ignoring the entire transaction and improperly encouraging taxpayers to separate invoices. We would then be concentrating on one brick in the building while ignoring the entire structure. The real-object test must be applied to the totality of the transaction.
*670 Id. Nevertheless, in finding the services not taxable, the court focused on the separability of the transactions, including the fact that the engineering services are “separately stated and separately billed.” Id. at 301. As mentioned above, however, the Rhode Island statute specifically excludes from taxation “labor or services rendered in installation of the property when the charge is separately stated.” Id. at 300 (emphasis added). In contrast, in Florida, such a focus is not required by the tax statute or case law. Indeed, no Florida case has even adopted the above-quoted categories for mixed transactions.
Moreover, assuming a court should apply an analysis by categories, the trial court, in effect, determined, by its findings, that the sales of systems engineering services in this case did not fit into the second category, as AT & T argues they should. As explained above, the trial court determined that “[t]he sale of engineering was inextricably intertwined with the sales of the telecommunications equipment in the transactions.” Thus, according to the trial court’s findings, the services were not “readily separable” from the property. Of course, because the trial court also found the services were not “incidental” to the receipt of the property, the services here also do not fit into the third category. Indeed, as the Department argues, perhaps a fourth category exists or should exist: “one in which goods and services are both needed and these goods and services are not ‘readily separable.’ ”
Further, as discussed by the trial court in the order on appeal and by the Department in its brief, the Rhode Island case also may be distinguished from this case on its facts. In the Rhode Island case, the court explained that “[t]he price of the equipment remained constant whether or not engineering services were ordered.” Clark, 624 A.2d at 301. In contrast, the trial court here specifically found “the price of the equipment was reduced or discounted by the purchase of engineering or installation services as well as equipment purchases” and “the engineering was linked by price to the equipment and installation sold.”
The other reported decision relied on by AT & T, Rylander v. San Antonio SMSA Ltd. Partnership, is also distinguishable from this case. Rylander relies, at least in part, on Clark even though the Rylander opinion does not indicate whether the Texas statute also specifically excludes from taxation services rendered in the installation of property when those services are separately charged, as the Rhode Island statute does. See Rylander, 11 S.W.3d at 487-89. As discussed above, the decision in Clark focuses on, among other things, the separate charges for the equipment and the engineering services, which is appropriate given the specific statute in Rhode Island. In addition, as in Clark, the Rylander opinion also indicates that “the taxpayer is not required to purchase the engineering services from the vendor who supplies the equipment, and the price of the equipment is not affected by acquiring the engineering services from a different vendor.” Rylander, 11 S.W.3d at 486. This is not the case here, however, because the trial court in this case specifically found that “the price of the equipment was reduced or discounted by the purchase of engineering or installation services as well as equipment purchases” and “the engineering was linked by price to the equipment and installation sold.”
In sum, we decline AT & T’s invitation to adopt one of these two proposed tests for application in this case. The trial judge did not need to use one of these tests here because he simply applied the statute. Given his factual findings, which AT & T does not challenge, the trial judge properly concluded the sales of engineering services in this case were taxable.
AFFIRMED.
WOLF and LAWRENCE, JJ., concur.