# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-10-00323-CV

---

**Austin Engineering Co., Inc., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT**
**NO. D-1-GN-07-000565, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In this suit to recover sales taxes paid under protest, appellant Austin Engineering Co., Inc. ("Austin Engineering") appeals from the trial court's order denying its motion for summary judgment and granting summary judgment in favor of appellees Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "the Comptroller"). *See* Tex. Tax Code Ann. § 112.052 (West 2008); *see also id.* § 112.054 (West 2008). We affirm that portion of the trial court's order denying Austin Engineering's motion for summary judgment, reverse that portion of the order granting summary judgment in favor of the Comptroller, and remand for further proceedings.

## BACKGROUND

Austin Engineering is a Texas corporation providing construction services to businesses and governmental entities. The president of the company, Paul Keller, testified by affidavit that Austin Engineering specializes in "utility and environmental construction of underground utilities, drainage improvements, roads and highways, airports, pump stations, water and wastewater treatment plants, and storm water filtration facilities." In connection with these construction and utility services, Austin Engineering, either directly or through subcontractors, installs erosion prevention devices such as silt fences, tri-dikes, and inlet protectors on construction sites. In his deposition testimony, Keller explained that silt fences consist of porous fabric attached to wire fencing and metal "t-posts." The silt fencing is buried underground in order to trap silt when water flows through the fabric, protecting groundwater from contamination. Keller further stated that tri-dikes are made of the same materials and used for the same general purpose as silt fences, but are built in a triangular shape and used to reinforce areas with high water flow. Inlet protectors, also made from the same materials as silt fences, are placed over stormwater inlets in order to prevent silt from entering the culverts.[1]

In 2006, the Comptroller conducted a sales and use tax audit of Austin Engineering for the period from January 1, 2000 to December 31, 2003. This audit resulted in a tax assessment

---

[1] Keller also testified that Austin Engineering's erosion control measures include the stacking of rocks into "rock berms" for the purpose of controlling water runoff. The Comptroller has taken the position that the installation of rock berms, which are permanent in nature, represent nontaxable new construction services. *See* Tex. Tax Code Ann. § 151.0101 (West 2008). Austin Engineering and the Comptroller agree that silt fences, tri-dikes, and inlet protectors are temporary in nature because they are either removed from the construction site or allowed to deteriorate after the work is completed.

of $53,654, including interest and penalties. Austin Engineering paid the sales and use tax under protest and then filed suit to recover the amounts paid, alleging that the Comptroller erroneously assessed tax on erosion control measures that were either nontaxable or exempt from taxation. *See id.* Austin Engineering also raised constitutional claims related to equal protection, equal and uniform taxation, and interstate commerce, *see* U.S. Const. art. I, § 8, cl. 3; U.S. Const. amend. XIV; Tex. Const. art. VIII, § 1, and sought a declaratory judgment that it did not owe the tax, penalties, or interest paid under protest and that the Comptroller's tax assessment was invalid because it violated Austin Engineering's constitutional rights, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). The parties filed cross-motions for summary judgment, and the trial court issued an order granting summary judgment in favor of the Comptroller on all claims, finding that Austin Engineering was not entitled to recover any of the tax, interest, or penalties paid under protest. This appeal followed.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the appellate court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if the reviewing court finds that the trial court erred, renders the judgment the trial court should have rendered. *Id.*

Austin Engineering's arguments are based primarily on issues of statutory construction. Statutes imposing a tax must be strictly construed against the taxing authority and

3

liberally construed in favor of the taxpayer, *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied), while statutory exemptions from taxation are strictly construed against the taxpayer, *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). Because the Comptroller is the agency charged with enforcing the tax code, the Comptroller's construction of the code is entitled to serious consideration, provided it is reasonable and does not contradict the plain language of the statute. *See Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993).

## DISCUSSION

Austin Engineering's arguments on appeal can be summarized into three issues. First, Austin Engineering takes the position that the trial court erred in granting summary judgment in favor of the Comptroller because the erosion control transactions at issue were either nontaxable or exempt from taxation. Second, Austin Engineering argues that the Comptroller's tax assessments violate the state and federal constitutions and are therefore invalid. Finally, Austin Engineering asserts that it is entitled to declaratory relief and attorney's fees under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011.

*Taxability of Erosion Control Transactions*

Austin Engineering presents four alternative arguments to support its position that the Comptroller improperly assessed sales tax on the transactions at issue here. The first of these arguments is that under the "essence-of-the-transaction" test, Austin Engineering is providing a nontaxable erosion control service when it installs silt fencing, tri-dikes, and inlet protectors on

4

construction sites. *See 7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 688 (Tex. App.—Austin 2010, pet. denied) (explaining that "essence-of-the-transaction" test is used to determine sales tax liability when taxable and nontaxable elements are bundled together in single transaction); *see also* Tex. Tax Code Ann. § 151.0101 (West 2008) (providing exhaustive list of taxable services). The Comptroller, on the other hand, contends that the essence of the transaction at issue here is not a service, but the sale or rental of tangible personal property in the form of silt fencing, tri-dikes, and inlet protectors. In the absence of an applicable exemption, the sale or rental of tangible personal property is subject to sales tax. *See* Tex. Tax Code Ann. §§ 151.005, .051, .054 (West 2008).

Under the essence-of-the-transaction test, "[i]f the real object of a mixed transaction is the purchase of equipment which is taxable, and the service element is incident to that purchase, the entire transaction is taxable." *Rylander v. San Antonio SMSA Ltd. P'ship*, 11 S.W.3d 484, 487 (Tex. App.—Austin 2000, no pet.). On the other hand, "if the essence of the transaction is the purchase of a nontaxable service, which incidentally includes the purchase of some . . . equipment that is taxable, the entire transaction is nontaxable." *Id.*

In *Combs v. Chevron, Inc.*, 319 S.W.3d 836, 842-43 (Tex. App.—Austin 2010, pet. denied), this Court applied the essence-of-the-transaction test to conclude that the installation of temporary scaffolding on a construction site was the sale or lease of temporary personal property—the scaffolding itself—rather than the provision of a nontaxable service. While the contracts in question incorporated services such as the erection, oversight, and disassembly of the scaffolding, this Court held that the essence of the transaction "was the rental of the scaffolding itself, not the attendant services. Chevron's underlying goal in executing the contracts was to

5

facilitate maintenance work at its refinery. It was scaffolding, not the services incidental to use of scaffolding, that Chevron primarily wanted." *Id.*

As in *Chevron*, we must review the transactions at issue to determine the underlying goal of Austin Engineering's customers. The summary-judgment record includes copies of Austin Engineering's construction services contracts, which include a line item in the total construction price for "Erosion Control Improvements," with a lump sum charge for both labor and materials.[2] In contracting for "Erosion Control Improvements," Austin Engineering's customers sought the ultimate result of erosion control on the construction site. It is the erosion control devices themselves, not any incidental services, that accomplish this result. Keller stated in his deposition that once silt fences, tri-dikes, and inlet protectors are installed, these items serve their intended purpose of erosion control without requiring any additional operation or action by Austin Engineering or the erosion control subcontractor, absent the need for repairs or cleaning. Services such as the digging of trenches for burying silt fencing, the installation of tri-dikes, or the cleaning of inlet protectors would be useless to Austin Engineering's customers without the ability to use the erosion control devices for their intended purpose on the construction site. *See id.* ("Chevron would (if possible) have gladly used the scaffolding without purchasing the attendant services. On the other hand, the attendant services would have been useless to Chevron without the ability to use the scaffolding to perform maintenance work.").

---

[2] According to the bid sheets and invoices in the summary-judgment record, Austin Engineering charged for silt fences using a lump sum per linear foot of fencing installed, and charged for inlet protectors and tri-dikes using a lump sum per item installed.

Austin Engineering urges that its customers did not specify the type of erosion control measures to be installed, but trusted Austin Engineering to provide the optimal combination of such measures for each particular construction site. This contention does not necessarily lead to the conclusion that the ultimate goal of Austin Engineering's customers was to obtain consulting services or advice as to the appropriate erosion control measures for each project, as any such advice would be of little use to the customers if they did not also obtain the devices themselves.

The Comptroller has consistently treated the installation of silt fencing as the sale or rental of tangible personal property. *See* Tex. Comptroller of Pub. Accounts, STAR Document No. 200303807L (Mar. 28, 2003) ("The installation . . . of temporary silt fences to prevent erosion is considered the rental of tangible personal property where [the seller] is required as part of the contract to remove the silt fence at a later date. The total charge for the fence, including labor to install, maintain, repair and take down the silt fence is taxable.");[3] *see also* Tex. Comptroller of Pub. Accounts, Hearing No. 44,116, STAR Document No. 200407857H (July 26, 2004); Tex. Comptroller of Pub. Accounts, STAR Document No. 200309150L (Sept. 18, 2003). These rulings are entitled to deference. *See Myers v. State*, 169 S.W.3d 731, 734 (Tex. App.—Austin 2005, no pet.) ("Construction of a statute by an administrative agency charged with its enforcement is entitled to consideration as long as it is reasonable and does not conflict with the plain language of the statute.").

---

[3] Presumably, contracts that do not require the seller to remove the silt fence at a later date would be considered the sale, rather than the rental, of tangible personal property.

Considering the nature of the transactions at issue here and the deference afforded to the Comptroller's interpretation of the tax code, we conclude that the essence of the transactions was the sale or rental of tangible personal property in the form of silt fences, tri-dikes, and inlet protectors, rather than the provision of an erosion control service. Thus, the transactions are subject to sales tax, absent an applicable exemption. *See* Tex. Tax Code Ann. §§ 151.005, .051, .054 (West 2008).

In three alternative arguments, Austin Engineering argues that even if the transactions at issue are considered taxable as the sale or rental of tangible personal property, no sales tax was due because the transactions qualify for exemptions. Specifically, Austin Engineering argues that (1) the erosion control devices were exempt from taxation because they were provided or consumed in connection with contracts to improve real property for the benefit of governmental entities, *see id.* § 151.311 (West 2008), (2) the transactions were subject to an exemption for water-related services and equipment, *see id.* § 151.355 (West 2008), and (3) those transactions involving the use of subcontractors represent tax-exempt sales for resale, *see id.* § 151.302 (West 2008). We will address each of these arguments in turn.

### 1.     *Exemption for Items Related to Tax-Exempt Contracts*

Items incorporated into real property of an exempt entity are exempt from taxation. *Id.* § 151.311(a); *see also id.* § 151.309 (West 2008) (exempting governmental entities from sales tax). In addition, tangible personal property that is necessary and essential for the performance of a contract for an improvement to real property for an exempt entity is exempt from taxation if the property in question is "completely consumed at the job site." *Id.* § 151.311(b). Tangible personal

8

property is considered to be completely consumed at the job site "if after being used once for its intended purpose it is used up or destroyed." *Id.* § 151.311(d). For purposes of section 151.311, exempt contracts include contracts with a nonexempt entity to improve real property for the primary use and benefit of a governmental entity. *See* 34 Tex. Admin. Code § 3.291(a)(5) (2010) (Tex. Comptroller of Pub. Accounts, Contractors). Exempt contracts also include contracts with a private party to improve real property by building public infrastructure improvements that "are dedicated to and will be accepted by a governmental entity." *See id.* § 3.291(d).

On appeal, the Comptroller does not disagree with Austin Engineering's assertion that the majority of its contracts represent exempt contracts to improve real property for the primary use and benefit of a governmental entity or development contracts to build public infrastructure improvements that are dedicated to and will be accepted by a governmental entity.[4] The Comptroller argues, however, that in order to qualify for the exempt-entity exemption under section 151.311, tangible personal property must be incorporated into real property, *see* Tex. Tax Code Ann. § 151.311(a), or completely consumed at the job site, *see id.* § 151.311(b). According to the Comptroller, the silt fences and other erosion control devices at issue here are neither incorporated

---

[4] During his deposition, Keller stated that 99 percent of Austin Engineering's work was either performed directly for a municipality or on real property that was later owned by a municipality. Keller explained that the bulk of the work involved infrastructure projects for subdivision developers, including streets, roads, waterlines, sewer lines, and storm drain facilities. The record also contains a number of sales and use tax exemption certificates provided to the Comptroller by Austin Engineering, reflecting that erosion control devices were purchased for use in contracts for improvements to be dedicated to and accepted by exempt entities. The majority of these exemption certificates are signed by non-exempt developers who contracted with Austin Engineering for the provision of the erosion control services in connection with public infrastructure improvements.

9

into real property nor completely consumed at the job site and therefore do not qualify for exemption under section 151.311.

We agree that the silt fences, tri-dikes, and inlet protectors are not incorporated into real property as permanent improvements, as the summary-judgment evidence reflects that these items are either removed from the job site or allowed to deteriorate after completion of construction. *See* 34 Tex. Admin. Code § 3.291(a)(7) (characterizing incorporated materials as property that becomes part of permanent improvements); *see also id.* § 3.347 (2010) (Tex. Comptroller of Pub. Accounts, Improvements to Realty). Keller testified in his deposition that silt fences, tri-dikes, and inlet protectors are temporary installations. He further explained that Austin Engineering either removes the devices after completion of the project or allows them to deteriorate, depending on the preferences of the customer. Keller stated that if the devices are not removed, they "don't last very long," and "just naturally deteriorate."

With respect to the exemption for items completely consumed at the job site in the performance of an exempt contract, the Comptroller contends that the silt fences are not completely consumed because they may ultimately be removed and reused after construction is complete. This contention conflicts with the summary-judgment evidence provided by Austin Engineering. In Keller's deposition, he testified that the materials used to construct silt fences cannot be reused after a project is completed because the "Highway Department insists on using new fabric, new T posts, new—new stuff" for each project. Keller also stated that while t-posts could be reused "[i]f you can get them out of the ground," the silt fencing "fabric is hard to reuse. It's . . . in a mess by the time you reuse it." Keller further testified that tri-dikes and inlet protectors cannot be reused. In an

10

affidavit produced as summary-judgment evidence, Keller averred that when silt fence materials are "pulled from the ground, they are no longer usable because the filter fabric has disintegrated, the wire mesh has been stretched apart, and the t-posts have often rusted or bent in removing them from the ground, rendering them useless without substantial reconstruction or rehabilitation." Keller further stated that inlet protectors and tri-dikes "have similar problems that generally prevent them from being reused."

Mark Mauldin, an environmental conservation program manager for the City of Austin, also provided an affidavit stating that "[o]nce a silt fence or inlet protection is used on one project, it is not generally usable on subsequent projects" because such devices are required to be free of sediment at the commencement of the project. Finally, Austin Engineering presented the affidavit of David Cheverere, the president of an erosion control subcontractor used by Austin Engineering.[5] In his affidavit, Cheverere states:

> Once the filter fabric, wire fences, and other components of the erosion control measures have been used once, they cannot be reused. They deteriorate over time. Only the T-posts can sometimes be reused, if it is possible to remove them from the ground without damage. However, the environmental laws and regulations generally require us to use all new materials when constructing erosion control devices.

---

[5] While Cheverere's affidavit does not appear in the clerk's record, Austin Engineering represents that it was provided to the trial court as an attachment to its motion for summary judgment. Both Austin Engineering and the Comptroller reference the affidavit in their briefs and summary-judgment pleadings, and Austin Engineering has included a copy of the affidavit in the appendix to its brief. Because the parties appear to agree that Cheverere's affidavit was considered by the trial court and should have been included in the record, we will consider it for purposes of appeal.

11

At a minimum, this evidence creates a fact issue as to whether the silt fences, tri-dikes, and inlet protectors may be reused after completion of a project or are completely consumed over the course of the project.

If the silt fences, tri-dikes, and inlet protectors cannot be reused, they may qualify for the exemption for consumable supplies, assuming they were required by a qualifying exempt contract.[6] The Comptroller considers consumable supplies subject to exemption under section 151.311(b) to include items such as nonreuseable concrete forms, nonreusable drop cloths, barricade tape, survey stakes and flags, tree markers, disposable rags, electricity, and sandpaper. *See* 34 Tex. Admin. Code § 3.291(a)(2); Tex. Comptroller of Pub. Accounts, STAR Document No. 200005321L (May 16, 2000) (providing partial list of qualifying consumable supplies); Tex. Comptroller of Pub. Accounts, STAR Document No. 9703345L (Mar. 26, 1997) (same). In the past, the Comptroller has taken the position that a silt fence cannot be considered a consumable supply because it is used throughout the duration of a single construction project. *See* Tex. Comptroller of Pub. Accounts, STAR Document No. 200303931L (Mar. 28, 2003) ("Silt fencing is not used up or destroyed after one use. It is used repeatedly as the construction progresses. It may be 'used up' at the end of the entire job, but not after one use, so it does not qualify for exemption as a consumable supply."). The Comptroller has not taken this position on appeal here. Furthermore, we disagree with the

---

[6] Any transactions in which Austin Engineering provided its customers with reusable erosion control devices would be considered the rental of tangible personal property and would not be subject to the exemption for consumable supplies. *See* Tex. Tax Code Ann. § 151.311(d) (West 2008) ("Tangible personal property that is rented or leased for use in the performance of the contract cannot be completely consumed for purposes of this section."). The provision of nonreusable erosion control devices, on the other hand, would be considered the sale of tangible personal property and therefore could be subject to the exemption for consumable supplies.

12

contention that silt fencing is not used up after "one use." If the "use" in question spans the length of the construction project, the fencing may in fact be used up at the end of one use. In that regard, nonreusable silt fences and other erosion control devices are similar to items such as barricade tape, tree flags, and nonreusable concrete form work. These items, while not necessarily "used up" instantly in the same manner as gas or electricity, are used up in a single use over the course of the project.

Austin Engineering has the burden of establishing its entitlement to an exemption. *See North Alamo Water Supply Corp.*, 804 S.W.2d at 899. Under the circumstances, we hold that Austin Engineering has provided sufficient evidence to create a fact question as to whether the silt fences and other erosion control devices at issue here are subject to the exemption for consumable supplies necessary to the performance of an exempt contract. *See* Tex. Tax Code Ann. § 151.311(b). Accordingly, we reverse the trial court's order granting summary judgment in favor of the Comptroller.

Austin Engineering requests that this Court render summary judgment in its favor, urging that the transactions at issue are exempt from taxation as a matter of law. *See Dorsett*, 164 S.W.3d at 661 (stating that in reviewing cross-motions for summary judgment, appellate court must review summary-judgment evidence, determine all questions presented, and render judgment trial court should have rendered). Austin Engineering's evidence regarding the reuse of erosion control devices consists solely of statements made in affidavits and deposition testimony, many of which are qualified in a manner that suggests further development of the facts would be necessary to determine whether the transactions at issue here qualify for the exemption for consumable supplies

13

required in the performance of an exempt contract. Keller, for instance, testified in his deposition that silt fence fabric is "hard to reuse," and stated in his affidavit that inlet protectors and tri-dikes have problems that "generally" prevent reuse. Similarly, Mauldin's affidavit states that used silt fences or inlet protectors are "generally" not reusable, while Cheverere averred that t-posts can "sometimes" be reused if it is possible to remove them from the ground. While these statements are sufficient to raise a fact issue, we cannot say that Austin Engineering has carried its burden of establishing as a matter of law that it is entitled to the exemption for consumable supplies required in the performance of an exempt contract. We will therefore proceed to review Austin Engineering's two remaining exemption arguments in order to determine whether either of those exemptions have been established as a matter of law.

### 2. Exemption for Water-Related Services and Equipment

Austin Engineering contends that its provision of silt fences and other erosion control devices is subject to an exemption for "equipment, services, or supplies used solely to construct or operate a water or wastewater system certified by the Texas Commission on Environmental Quality as a regional system." *See* Tex. Tax Code Ann. § 151.355(5). Austin Engineering claims that some of its projects during the audit period pertained to water or wastewater systems certified by the Texas Commission on Environmental Quality (TCEQ) as regional systems. While Keller testified in his deposition that Austin Engineering had performed work for certified water systems at some point during the audit period, he did not testify that any particular erosion control measures were "used solely to construct or operate" water system projects. Because Austin Engineering has not provided any evidence to suggest that the Comptroller assessed sales tax on the provision of silt fences, tri-

14

dikes, or inlet protectors "used solely to construct or operate" certified water systems, Austin Engineering is not entitled to summary judgment on this issue.[7]

Austin Engineering also argues that its provision of erosion control devices is exempt from sales tax under tax code section 151.338, which exempts "services involved in the repair, remodeling, maintenance, or restoration of tangible personal property" if such services are required by law "in order to protect the environment or to conserve energy." *Id.* § 151.338 (West 2008). As previously discussed, the essence of the transaction at issue here is the sale or rental of tangible personal property, not the attendant services. For this reason, Austin Engineering's provision of erosion control devices is not subject to the exemption for environmental services required by law. *See id.*

### 3. Sales for Resale

In its final exemption argument, Austin Engineering asserts that it is entitled to the sale-for-resale exemption. This argument is limited to those transactions in which Austin Engineering did not provide erosion control devices to its customers directly, but obtained the devices from erosion control subcontractors on behalf of its customers. Austin Engineering takes the position that these transactions with its subcontractors represent tax-exempt sales for resale. *See id.* § 151.302(a) ("The sale for resale of a taxable item is exempted from the taxes imposed by this

---

[7] Section 151.355 also exempts equipment "used solely" to reduce or eliminate water use or for brush control designed to enhance the availability of water. *See* Tex. Tax Code Ann. § 151.355(1), (3) (West 2008). Keller confirmed in his deposition that the erosion control devices provided by Austin Engineering are not used solely to reduce or eliminate water use, nor are they used solely for brush control designed to enhance water availability.

chapter."); *see also Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied) (explaining that purpose of sale-for-resale exemption is prevention of double taxation).

Assuming without deciding that Austin Engineering's purchase of erosion control devices from subcontractors could be exempt from tax as a sale for resale, Austin Engineering would not be entitled to claim the exemption because it is not the party required to collect the tax. The subcontractor, as the party collecting the sales tax, could attempt to claim the exemption by acquiring a resale certificate from Austin Engineering reflecting that the property was acquired for the purpose of being resold. *See* Tex. Tax Code Ann. § 151.054(b) (West 2008) ("A sale is exempt if the seller received in good faith from a purchaser . . . a resale certificate stating that the tangible personal property . . . is acquired for the purpose of selling, leasing, or renting it in the regular course of business . . . ."); *see also id.* § 151.054(e) (providing that *seller* may not claim deductions from audit results based on sale-for-resale exemption unless resale certificates are in seller's possession and provided to Comptroller within 60 days of request); 34 Tex. Admin. Code § 3.285 (2010) (Tex. Comptroller of Pub. Accounts, Resale Certificate; Sales for Resale). Austin Engineering, however, cannot claim the sale-for-resale exemption in connection with its own sales tax audit, as it is claiming to be the purchaser, rather than the seller, in a tax-exempt sale-for-resale transaction. As a result, the trial court did not err in denying Austin Engineering's motion for summary judgment on this issue.

Having concluded that Austin Engineering has not proven any of its claims of exemption as a matter of law, we affirm that portion of the trial court's order denying Austin

Engineering's motion for summary judgment. Because Austin Engineering has raised a fact question on the issue of whether its provision of erosion control devices is subject to the exemption for consumable supplies used in exempt contracts, we reverse the portion of the trial court's order granting summary judgment in favor of the Comptroller, and remand for further proceedings.

*Constitutional Claims*

In its second issue on appeal, Austin Engineering argues that the Comptroller's imposition of sales tax on the transactions at issue here violates its constitutional rights to equal protection and equal and uniform taxation. *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. VIII, § 1. This argument is primarily based on Austin Engineering's contention that the Comptroller has treated it differently from other taxpayers providing construction services on property owned or controlled by exempt entities. We have previously determined that a fact question exists as to whether Austin Engineering is entitled to an exemption for supplies consumed in the course of an exempt contract. We therefore need not address Austin Engineering's constitutional claims, as those claims may subsequently be rendered moot by proceedings in the trial court. *See* Tex. R. App. P. 47.1.

*UDJA Claims*

In its third issue on appeal, Austin Engineering argues that it is entitled to a declaratory judgment that no tax is due and that the Comptroller's tax assessment violates its constitutional rights. Austin Engineering further requests an award of attorney's fees under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (providing that trial court may award "necessary attorney's fees as are equitable and just" in declaratory-judgment action under UDJA).

17

The Comptroller responds that Austin Engineering's UDJA claim is redundant to the remedy provided under the tax code and that a UDJA claim cannot be used solely as a vehicle to obtain attorney's fees. *See Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.).

When a statute provides an avenue for attacking an agency order, a declaratory-judgment action will not lie to provide redundant remedies. *See Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 669 (Tex. App.—Austin 2006, no pet.); *see also Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy.").

Austin Engineering urges that it is not merely seeking a return of taxes paid under protest, but a determination as to the validity and the constitutionality of the Comptroller's actions in assessing the tax. Essentially, Austin Engineering is asserting that the applicable statutes and rules are unconstitutional as applied by the Comptroller in this case. A request for a declaratory judgment regarding the constitutional validity of an agency action is distinct from, and therefore not redundant to, a challenge to the correctness of the agency's action. *See Ben Robinson Co. v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 153 (Tex. App.—Austin 1996, writ denied); *see also Local Neon Co. v. Strayhorn*, No. 03-04-00261-CV, 2005 Tex. App. LEXIS 4667, at *24 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) (holding that requests for declaratory relief related to constitutional challenges were not redundant to remedies afforded by tax-protest suit). Thus, to the

extent Austin Engineering seeks a declaration regarding the constitutionality of certain tax statutes and regulations as applied in this case, the UDJA claim is not a redundant remedy.

Austin Engineering has not, however, established its entitlement to the requested declaratory relief as a matter of law. As discussed above, Austin Engineering has done no more than raise a fact issue on the applicability of the exemption for consumable supplies required in the performance of an exempt contract. Further, we express no opinion on Austin Engineering's constitutional claims, as these claims are contingent upon further proceedings to be held in the trial court. Accordingly, the trial court did not err in denying Austin Engineering's motion for summary judgment with respect to its claims for declaratory relief, nor did it abuse its discretion in declining to award attorney's fees under the UDJA. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (stating that attorney's fee awards under UDJA are entrusted to trial court's sound discretion).

## CONCLUSION

We affirm that portion of the trial court's order denying summary judgment in favor of Austin Engineering, reverse that portion of the order granting summary judgment in favor of the Comptroller, and remand the cause for further proceedings consistent with this opinion.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed in part; Reversed and Remanded in part

Filed: August 5, 2011

19