Johnny REYES, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–94–0278–CR.

Court of Appeals of Texas, Amarillo.

Sept. 25, 1995.

Roderique S. Hobson, Jr. and David T. Duncan, Jr., Lubbock, for appellant.

William Sowder, District Attorney, Lubbock and Michael West, Appellate Chief, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In five points of asserted error, appellant Johnny Reyes challenges his conviction of first degree murder committed by use of a deadly weapon. The jury assessed his punishment at life confinement in the Institutional Division of the Texas Department of Criminal Justice. In those points, appellant contends the trial court erred in overruling his motion to suppress a butcher knife and wallet and by including a parties instruction. For reasons hereinafter expressed, we affirm the judgment of the trial court.

On the night of December 11, 1993, while patrolling near the 2400 block of East 7th Street, City of Lubbock police officers heard gunshots and the sound of a woman screaming. En route to the scene of the shooting, the officers observed a car on 7th Street driving away from the area at a high rate of speed. The car failed to stop at a stop sign and turned in front of the officers. One of the officers stopped the car, which was driven by appellant, handcuffed him, and directed his companion officer to "frisk" the car for weapons. As he approached the car, the officer saw a knife lying in the back left floorboard and a wallet lying in the front right seat. While taking possession of the wallet for identification purposes, the officer noticed a second knife on the console of the automobile. The officer did not touch or remove either of the knives, but removed from the wallet a driver's license bearing what they later discovered was the victim's name. After replacing the wallet, the officer removed the ignition keys from the car, locked it, and taking appellant with them, drove to the crime scene. Upon their arrival, the officers discovered a murder victim who had been both shot and stabbed. Recalling the knives which they had seen in the automobile driven by appellant, the officers returned appellant back to his car, searched it, seized the two knives they had seen, and waited for a crime scene officer to photograph the scene. Appellant was then taken to police headquarters, questioned, and again searched.

In his first four points, appellant contends the knives and the wallet were seized as the result of a search conducted in violation of the Fourth and Fourteenth Amendments to the Federal Constitution and Article I, § 9 of the Texas Constitution. He also contends that overruling his motion to suppress these items violated Code of Criminal Procedure art. 38.23, which prohibits the receipt of evidence seized in violation of the state or federal constitutions or laws.

■ Initially, the State contends that because neither appellant's motion to suppress nor a written order overruling it are in the record before us, appellant has failed to present a sufficient record for review. The thrust of the State's argument is that the oral pronouncements of the trial court "are actually the court's findings preliminary to the signing of the order" and it is the actual written order which would control. Thus, it posits, there being no written order, the record does not show an appealable ruling. We disagree.

In support of its theory, the State places primary reliance upon our decision in *Chandler v. Reder*, 635 S.W.2d 895 (Tex.App.—Amarillo 1982, no writ). However, a careful reading of that case reveals that, while we expressly recognized that a judgment may be rendered orally, in discussing the order in question there, we noted that "the lack of rendition of judgment by the court's oral pronouncement is peculiarly apparent" and, because of the lack of a dispositive judgment, was not appealable. *Id.* at 897. However, in this case the record is quite clear that a motion to suppress was filed, testimony was taken in connection with that motion, and the court's decision to overrule the motion was quite clear and definite. Thus, the record is sufficient to preserve the question for appellate review.

■ The State next contends that because the automobile did not belong to him, appellant lacks standing to raise the constitutional questions presented by him. Again, we disagree. The rule is established that if appellant cannot show he had a legitimate expectation of privacy in the vehicle, he does not have standing to contest its search. When the legality of a search is in issue, the defendant bears the burden of proving his own privacy rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *Wilson v. State*, 692 S.W.2d 661 (Tex.Crim.App.1984) (opinion on rehearing).

■ The test for determining the existence of a legitimate expectation of privacy is twofold. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). We must first determine whether by his conduct, appellant demonstrated an actual (subjective) expectation of privacy. If he did, we must next determine if that subjective expectation is one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. at 740, 99 S.Ct. at 2580, 61 L.Ed.2d at 226–27.

■ At the suppression hearing, Carol Valdez, appellant's former girlfriend, testified that although her mother bought the car and paid for the insurance on it, it was her car. She also said she let appellant borrow the car without express permission, and opined that there was nothing unusual about appellant taking the car as he did on the night of the murder.

■ It is established in this state that a defendant has standing to challenge the search of an automobile he does not own if he shows he gained possession of the borrowed car from the owner or one authorized to give permission to drive it. *Nite v. State*, 882 S.W.2d 587 (Tex.App.—Houston [1st Dist.] 1994, n.w.h.) citing *State v. Bassano*, 827 S.W.2d 557, 559–60 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Stine v. State*, 787 S.W.2d 82, 85 (Tex.App.—Waco 1990, pet. ref'd); *Sutton v. State*, 711 S.W.2d 136, 138 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

The evidence produced at the hearing is sufficient to show that on the night in question, appellant had permission to use the car from a person authorized to give such permission. Because his possession of the car was not wrongful, he had a privacy interest that society is willing to recognize. Thus, under either state or federal constitutional tests, he has standing to challenge the constitutionality of the search.

■ Having made that decision, it next becomes our duty to determine the legality of the two separate warrantless searches of the automobile conducted by the officers. A warrantless search is *per se* unreasonable unless it comes within one of the court-created exceptions to the general requirement that a search must be conducted under warrant. *State v. Phillips*, 752 S.W.2d 194, 196 (Tex.App.—Amarillo 1988, no pet.). In the

case of a warrantless search, it is the State's burden to establish that an exception exists authorizing the search. *Wilson v. State*, 621 S.W.2d 799 (Tex.Crim.App.1981).

■ In his appeal, appellant raises challenges under the Fourth Amendment to the federal constitution and Article I, § 9 of our state constitution. We recognize the pronouncement by the court in *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991), that the Texas Constitution was not intended to "mirror that of the federal government," and that it reserved the right to interpret Article I, § 9 on independent state constitutional grounds. *Id.* at 690. However, perusal of the court's decisions subsequent to *Heitman* reveals that it has departed from traditional Fourth Amendment analysis in only two instances. In *Richardson v. State*, 865 S.W.2d 944 (Tex.Crim.App.1993), a divided court differed from the decision of the United States Supreme Court in *Smith v. Maryland, supra*, to the contrary, and held that the use of a pen register may constitute a search under Article I, § 9. *Id.* at 953–54. In *Autran v. State*, 887 S.W.2d 31 (Tex.Crim. App.1994), the court concluded Article I, § 9 provides greater privacy interests in closed containers in vehicles than the fourth amendment.

Barring the *Richardson* case, however, we cannot find, nor have we had cited to us, any other case in which the Court of Criminal Appeals has analyzed Article I, § 9 differently from the analyses applied to the Fourth Amendment to the Federal Constitution. *See, e.g., Aitch v. State*, 879 S.W.2d 167, 172 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

■ The four exceptions to the general rule recognized by both the federal and Texas courts are 1) a search and seizure incident to a lawful arrest, 2) the "automobile" exception, 3) the inventory search, and 4) the "plain view" doctrine. *Aitch v. State*, 879 S.W.2d at 172. Parenthetically, if the decision of the trial court is correct under any theory of the law, even if it advanced an erroneous reason for its decision, it is entitled to be upheld. *Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988).

### Investigative Detention

■ It is established that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Flores v. State*, 895 S.W.2d 435, 440 (Tex.App.—San Antonio 1995, no pet.), citing *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). However, to justify such detention, the officers must have specific articulable facts which, considering the officer's experience and his inferences from those facts, would reasonably warrant an intrusion on the freedom of the citizen stopped for such an investigation. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879. There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Flores*, 895 S.W.2d at 440.

■ Reiterated, the officers heard gunshots and the sound of a woman screaming near the 2400 block of East 7th Street. While en route to the scene, the officers observed appellant's car travelling at a high rate of speed, failing to stop at a stop sign, and turning in front of them. Under the facts, the officers had specific articulable facts which, considering their experience, personal knowledge and inferences reasonably to be made from those facts, would reasonably warrant an investigatory detention.

■ In a *Terry*-type stop, because a full custodial arrest has not been effected, the officers' search "is limited to a search for weapons in circumstances where the officers have a reasonable belief that the suspect is potentially dangerous to them." *Flores*, 895 S.W.2d at 441. Here, while looking in the car for weapons, before getting into it, the officer saw a knife lying in the back left floorboard and a wallet lying in the front right seat. These items were in plain view. An individual has no reasonable right of privacy in that which he exposes to the public. *Spears v. State*, 801 S.W.2d 571, 575 (Tex. App.—Fort Worth 1990, pet. ref'd). Accord-

ingly, the officer was entitled to remove the identification from the wallet at the time. Additionally, he did not take possession of the knife at the time. Because the discovery of the knife and the wallet was the result of a valid investigative detention, they were not the fruit of an illegal search.

### Search Incident to Arrest

■ Texas Code of Criminal Procedure art. 15.22 provides that an arrest occurs when a person is placed under restraint or taken into custody by an officer with or without an arrest warrant. Thus, at the time the officers handcuffed appellant, the investigatory detention became an arrest and the officers must have had probable cause for the arrest. *Flores,* 895 S.W.2d at 441.

■ As relevant here, article 14.03 of the Code of Criminal Procedure authorizes a warrantless arrest of:

persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws.

Tex.Code Crim.Proc.Ann. art. 14.03(a)(1) (Vernon Supp.1995).

According to the evidence, the officers had heard gunshots and screaming, and, moments later observed appellant leaving the scene of the shooting at a high rate of speed. Under the evidence, the officers had probable cause to arrest appellant and were authorized to do so by provision of article 14.03(a)(1). Even assuming the arrest was valid, appellant contends that under the Texas constitution, the officers' right to search extended only to the area where appellant could reasonably expect to retrieve a weapon. He contends that they exceeded that scope, thereby invalidating their discovery of the knife and wallet. Again, we disagree. Even assuming, arguendo, that the Texas Constitution limits the officers' right to search as appellant contends, as we have discussed above, the knife and the wallet were in "plain view" and their discovery was not in violation of either the federal or state constitutions.

### The Automobile Exception

■ Appellant also contends the second warrantless search of the automobile was in violation of his constitutional rights under both the federal and state constitutions. However, once probable cause to believe that an automobile contains evidence of a crime is established, officers may conduct an immediate warrantless search of an automobile. *Amos v. State,* 819 S.W.2d 156, 161 (Tex. Crim.App.1991). In order to determine whether the officers had reasonable cause to conduct the second warrantless search, we must examine the totality of the circumstances before the officers at that time. However, in making that decision, inasmuch as the car was parked, something more than the inherent mobility of an automobile must be shown in order to establish the exigent circumstances necessary to excuse the obtaining of a warrant.

■ As we have commented, during the initial investigative detention, the officer did not touch or remove either of the knives, but waited until the second search to do so. It is true that he checked the identification in the wallet and then replaced it in the car. However, the evidence showed that at the crime scene, probable cause to seize the observed items arose when: 1) the officers discovered that the victim had been stabbed in addition to being shot, 2) appellant made a voluntary statement that an individual named Daniel Briseno threw the knife in his car and told him to leave the scene of the crime, and 3) witnesses stated the victim's wallet was in the car driven by appellant.

■ Moreover, although the officers had left the car locked and legally parked, exigent circumstances existed. The expectation of privacy with regard to one's automobile is significantly less than that relating to one's home or office because vehicles travel on public highways and are subject to extensive governmental regulations. *Id.* at 173. Under the surrounding circumstances, the fact that officers had arrested appellant, locked and parked the car, and taken possession of his keys did not detract from the

exigency of the situation. Cars are frequently "mobilized" without regard to keys. *Amos,* 819 S.W.2d at 163. Exigent circumstances can exist where an automobile is parked on the street under circumstances where someone might tamper with it. *Id.* Here, one of the officers testified the car was parked in a "high-risk" area. Also, the actual ownership of the car was unknown. Because of the risk of the car being stolen, tampered with, or removed by its owner or someone else with the ability to "mobilize" it, sufficient exigent circumstances existed and justified the officers' need to act quickly without obtaining a warrant. *Id.* at 174. Appellant's first four points are overruled.

In his fifth point, appellant posits the trial court erred in giving a parties charge "because the evidence is insufficient to support the instruction." At trial, appellant's objection was:

Your Honor, we object to the Court's charge, the inclusion of the paragraph on parties on the murder charge. Our position is there is no evidence, or insufficient evidence, as a matter of law to submit this case as a matter of parties.

I will point out to the Court that the party he is supposed to be acting with, criminally responsible possibly for his actions, is Daniel Briseno, which their own evidence has said has been no billed by a grand jury for insufficient evidence.

It is our position there is no evidence or insufficient evidence, as a matter of law, to submit the case on murder under the law of parties.

The court's instruction giving rise to appellant's objection was as follows:

If you find from the evidence beyond a reasonable doubt that on or about the 11th day of December, 1993, in Lubbock County, Texas, Daniel Briseno did then and there intentionally or knowingly cause the death of an individual, Ruben Valderaz, by *stabbing* the said Ruben Valderaz with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, and that JOHNNY REYES, then and there, acting with intent to promote or assist the commission of the offense, if any,

aided Daniel Briseno to commit the offense, if any, by his own actions and conduct during the commission of said offense, if any, then you will find the defendant, JOHNNY REYES, guilty of murder as alleged in Count I of the indictment.

The thrust of appellant's argument on appeal is that there was no evidence that Daniel Briseno *stabbed* the deceased, and "the paragraph is erroneous in that it charges the jury with a theory of the case which is not supported by the evidence."

■ Article 36.14 of the Code of Criminal Procedure directs the trial court to give a written charge on the law to the jury in felony cases. It reads, in relevant part:

Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, *distinctly specifying each ground of objection.* (emphasis added).

Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.1995).

■ This article is mandatory. *Pennington v. State,* 697 S.W.2d 387, 390 (Tex. Crim.App.1985). There must be strict compliance in order to warrant review. *Id.* The purpose of this enactment is to enable the judge to know in what respect the defendant regards the charge as defective and to afford the jury an opportunity to correct it before reading the charge to the jury. *Id.; citing Seefurth v. State,* 422 S.W.2d 931, 936 (Tex. Crim.App.1967). Thus, to create a predicate for complaint of a jury charge on appeal, the accused is required to distinctly specify each ground of objection. *Pennington,* 697 S.W.2d at 390 (*citing Littleton v. State,* 239 S.W. 202 (Tex.Crim.App.1922)). To be valid, the objection must be specific and clear enough to advise the trial court of the nature of the objection. *Pennington,* 697 S.W.2d at 390; *citing James v. State,* 418 S.W.2d 513 (Tex.Crim.App.1967). If the objection is not specific enough, nothing is presented for review. *Hackbarth v. State,* 617 S.W.2d 944 (Tex.Crim.App.1981).

■ Appellant's trial objection was that the evidence was insufficient to support the

submission of a parties' charge—generically. It was not specific enough to advise the trial judge that he was objecting on the ground he now raises, *i.e.*, that it charged on a theory of the case not supported by the evidence. That being so, appellant did not raise a trial objection on the ground he now urges.

 In a situation such as this, where there appears to be an error in the charge, and the question is raised for the first time on appeal, the conviction will not be disturbed because of the error, unless it be an error that is so egregious and created such a harm that the defendant has not received a fair and impartial trial. In order to make the decision whether that is the case, the actual degree of harm must be analyzed in light of the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); Tex. Code Crim.Proc.Ann. art. 36.18 (Vernon Supp.1995).

While appellant bases his argument on an incorrect complicity instruction, he ignores the paragraph that treats appellant as a principal.[1] If the evidence clearly supports appellant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless. *Black v. State*, 723 S.W.2d 674, 675 (Tex.Crim.App.1986); *Brown v. State*, 716 S.W.2d 939, 945–46 (Tex. Crim.App.1986). The trial evidence shows beyond cavil that Daniel Briseno shot the victim with a handgun. According to the medical testimony, death was caused by two of the gunshot wounds and one of the stab wounds. Although there were several stab wounds, a single stab wound struck the aorta and, according to the medical testimony, caused "a lot of hemorrhage and a lot of bleeding...." There was testimony that ap-

pellant committed the stabbing, and that he stated that had he not stabbed Valderaz, the gunshots would not have killed him. Further, the State's argument and theory of the case was that appellant was primarily responsible for Valderaz's death. The evidence, if accepted by the jury as it apparently was, was sufficient to support the State's theory that appellant caused the death of the victim by stabbing him in the heart. That being true, the claimed charge error, if any, was harmless. *Brown*, 716 S.W.2d at 946.

Appellant's fifth point of error is overruled and, there being no reversible error, the judgment of the trial court is affirmed.

---

1. That instruction reads as follows:

    Now, therefore, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 11th day of December, 1993, in Lubbock County, Texas, as alleged in Count I of the indictment, the defendant, JOHNNY REYES, acting alone, did then and there intentionally or knowingly cause the death of an individual, Ruben Valderaz, by stabbing the said Ruben Valderaz with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, then you will find the defendant guilty of murder as alleged in Count I of the indictment[;]