NO. 07-01-0427-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 1, 2002



______________________________




ABELINO REYES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 232ND DISTRICT COURT OF HARRIS COUNTY;



NO. 858332; HONORABLE MARY LOU KEEL, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 In this appeal, appellant Abelino Reyes challenges his conviction for the offense of
aggravated sexual assault of a child and the resulting jury-assessed punishment of 38
years confinement in the Institutional Division of the Department of Criminal Justice. In
doing so, he presents two issues for our decision, i.e., 1) the court's admission of an
uncharged prior bad act at the punishment hearing, and 2) the trial court's failure to give
appellant's requested charge on a lesser-included offense. We affirm the judgment of the
trial court.

 The complainant, AH, lived with her grandmother and appellant, who was her
grandmother's boyfriend, from the age of seven until she was 13. She testified that when
she was eight years old, appellant began to touch her on her chest and genitals. She
reported this conduct to her grandmother, but her grandmother did not report it to the
police. AH averred that appellant stopped touching her for about three months, but then
the conduct resumed. She did not tell her grandmother again because she thought it
would upset her. Later, during the summer of 1998, when AH was 11, appellant
penetrated her with his penis. Later, in 1999, appellant assaulted her a second time. She
then decided she could not live any longer with appellant and intentionally made him angry
by moving a truck. This had the desired effect, and appellant told AH he did not want her
there (with him and her grandmother) any more. Her grandmother then took AH to AH's
mother's house, told her that she "couldn't handle [AH]," and left her there.

 After she had been with her mother for two weeks, AH told her about the abuse. 
Her mother contacted the police, and they began an investigation that included a medical
examination and an interview at the Children's Assessment Center. This prosecution is
the result of that investigation.

 The gist of appellant's first issue contention arises from the punishment phase
testimony of AH's mother, Angelina. Over objection, Angelina testified that approximately
13 years earlier, when she was 16 and AH was two, they lived with Angelina's mother and
appellant. On one occasion when her mother was away, appellant began "fondling" and
moving his hand up on her leg. Angelina said she told him to stop and pushed his hand
away. She also told her mother about the incident. On another occasion, Angelina
testified, she was helping her mother get boxes from a shelf when appellant, in view of her
mother, grabbed her breast. Her mother attempted to excuse appellant's conduct by
saying he was intoxicated at the time. In response, the defense called a longtime friend
of Angelina, who averred that Angelina never told her of these occurrences.

 Consistent with his trial objection, appellant argues Angelina's testimony was
inadmissible because it did not comply with article 38.07 of the Code of Criminal
Procedure as it stood in 1988, the time of the alleged incident with Angelina. At that time,
article 38.07 provided that a conviction under chapter 21 of the Penal Code could be
supported upon the uncorroborated testimony of a victim under the age of 14 if, within six
months of the offense, the victim had informed any person other than the defendant. Tex
Code Crim. Proc. Ann. art. 38.07 (Vernon 1975) (repealed). Chapter 21 of the Penal Code
includes sexual assault and indecency with a child.

 The current version of article 38.07 authorizes conviction on the uncorroborated
testimony of a victim under the age of 17 for the offenses of indecency with a child and
aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon Supp. 2002). 
In support of his contention that the admission of Angelina's testimony was reversible
error, appellant cites and relies on Carmell v. Texas, 529 U.S. 513, 120 S.Ct. 1620, 146
L.Ed.2d 577 (2000). However, that case is distinguishable. 

 In Carmell, the issue presented was whether the testimony of the child complainant
was inadmissible because of the lack of the timely outcry required under the version of the
statute in force at the time of the offense, or whether her testimony was admissible
because the statute in force at the time of trial did not require such an outcry. It was in that
context that the Carmell court held that the constitutional prohibition against ex post facto
laws required application of the version of article 38.07 that was in effect at the time of the
offense. However, the issue here is whether the testimony of a witness, not the defendant, 
about prior uncharged bad conduct is admissible at the punishment phase. Appellant has
not cited, nor have we found, any authority that supports the position that article 38.07
governs the admission of evidence at punishment. See Williams v. Steele, 653 S.W.2d
517, 519 (Tex.App.--Beaumont 1983, no writ) (holding art. 38.07 is not applicable to
extraneous offenses otherwise properly admitted before the jury).

 The admissibility of evidence at the punishment phase of trial is governed by article
37.07 of the Code of Criminal Procedure. In relevant part, that article provides:

 Sec. 3(a)(1) . . . evidence may be offered by the state and the defendant as
to any matter the court deems relevant to sentencing, including but not
limited to the prior criminal record of the defendant, his general reputation,
his character, an opinion regarding his character, the circumstances of the
offense for which he is being tried, and, notwithstanding Rules 404 and 405,
Texas Rules of Evidence, any other evidence of an extraneous crime or bad
act that is shown beyond a reasonable doubt by evidence to have been
committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or
finally convicted of the crime or act . . . .

 

Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 2002).

 Moreover, even assuming arguendo, and only arguendo, that article 38.07 is
applicable during the punishment phase of a trial, admission of Angelina's testimony did
not violate that statute. In both incidents she said that she made outcry to her mother. (2)

Article 38.07 does not require that the outcry witness actually testify. Additionally,
evidence about the first incident does not establish an offense under chapter 21 of the
Code. The nearest offense defined under chapter 21 would be indecency with a child (§
21.011), which requires exposure or "sexual contact" defined as "touching of the anus,
breast, or any part of the genitals." Section 21.01(2) (defining sexual contact). At most,
the testimony established misdemeanor assault as defined in section 22.01(a)(3) of the
Penal Code. Also, assuming that the testimony concerning the second incident was
sufficient to establish the offense of indecency with a child, its admission would not violate
article 38.07 because Angelina did make an outcry to her mother. Appellant's first issue
is overruled.

 In his second issue, appellant contends that the trial court reversibly erred in failing
to charge the jury on the lesser-included offense of indecency with a child. Parenthetically,
the State does not deny that indecency with a child can be a lesser-included offense of
aggravated sexual assault. See Ochoa v. State, 982 S.W.2d 904, 908 (Tex.Crim.App.
1998). In response, the State initially argues that appellant failed to preserve his
complaint because his requested instruction was not sufficiently specific. The requested
instruction was as follows:

 Court: Any objections to the charge?

 Defense: We would request the lesser included offense of indecency with
a child.


 Court: Denied.


 Defense: And one more lesser included would be a simple assault.


 Court: Denied.



 Citing Reyes v. State, 910 S.W.2d 585, 592 (Tex.App.--Amarillo 1995, pet. ref'd),
and Jiminez v. State, 953 S.W.2d 293, 298 (Tex.App.--Austin 1997, pet. ref'd), the State
contends that to preserve error, appellant must have specified in his request which of the
alternative manners of committing the offense he wanted in the charge. We disagree.

 In Reyes, the trial objection was to the submission of a parties charge, while the
objection on appeal was that the evidence was insufficient to support the theory charged.
910 S.W.2d at 593. Because the appeal challenge was different from that made at trial,
we held it was insufficient to preserve the question. Id. However, Jiminez is factually
similar in that it also involved a charge of aggravated sexual assault and a request for a
charge on the lesser-included offense of indecency with a child. 953 S.W.2d at 298.
Jiminez held the trial court reversibly erred in refusing the charge because the objection
with accompanying argument was sufficiently specific to clearly identify to the trial court
the basis of the objection, even though a special requested charge was not tendered. Id.

 We do not agree with the State that these cases show the inadequacy of appellant's
request to preserve error. Reyes is distinguishable because the alleged error was not
preserved for appellate review because of the variance between the trial objection and the
appellate contention. No such discrepancy exists here. Also, although the Jiminez court
mentioned the argument supporting the objection there, the failure to present a supporting
trial argument here does not prevent the request from being sufficiently specific to inform
the trial court of the asserted charge deficiency.

 In criminal cases, requests and objections to the court's charge are governed by
article 36.14 of the Code of Criminal Procedure (Vernon 1981), and its requirements are
exclusive. (3) The statute requires that requests and objections to the court's charge be in
writing, but that requirement is met by an objection or request dictated into the record. Id. 
With regard to the necessary specificity of the request or objection, the Court of Criminal
Appeals has instructed "the objection must be specific and clear enough to apprize the trial
court of the nature of the objection." Pennington v. State, 697 S.W.2d 387, 390 (Tex.Crim.
App. 1985). Appellant's request was sufficient to meet this requirement.

 The seminal case discussing the standard for determining when a charge on a
lesser-included offense must be given is Royster v. State, 622 S.W.2d 442 (Tex.Crim.App.
1991). On original submission, the court quoted from Sansone v. U.S., 380 U.S. 343, 85
S.Ct. 1004, 13 L.Ed.2d 882 (1965), the comment that "a lesser-included offense instruction
is only proper where the charged greater offense requires the jury to find a disputed factual
element which is not required for conviction of the lesser-included offense." Royster, 622
S.W.2d at 444. On rehearing, the court reexamined the issue, and explicated a two-step
analysis to be used in determining when such an instruction was required. As explicated,
the analysis requires, first, the lesser-included offense must be included within the proof
necessary to establish the offense charged, and second, there must be some evidence
that if the defendant is guilty, he is only guilty of the lesser offense. Id. at 446. The
evidence must establish the lesser-included offense as a valid rational alternative to the
charged offense. Westbrook v. State, 29 S.W.3d 103, 113-14 (Tex.Crim.App. 2000), cert.
denied, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). In Jiminez, the Austin
Court of Appeals noted, "an issue whether the defendant is guilty only of a lesser included
offense is raised if there is evidence that affirmatively rebuts or negates an element of the
greater offense, or if the evidence is subject to different interpretations, one of which
rebuts or negates the crucial element." Jiminez, 953 S.W.2d at 299 (citing Schweinle v.
State, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996)). See also Tex. Code Crim. Proc. 37.09
(Vernon 1981).

 Supporting his proposition that a charge should have been given, appellant argues,
"the only distinguishing factor between the greater and lesser offense is the allegation of
penetration." Our evaluation of this argument requires that we examine the indictment and
the elements of both offenses. Tracking the elements of section 22.021, the indictment
alleged appellant 1) intentionally and knowingly 2) caused the penetration of AH's sexual
organ 3) by his sexual organ, and 4) she was younger than 14 years of age at the time. 
As relevant here, the elements of indecency with a child are that the actor 1a) engages in
sexual contact, defined to include touching the genitals of another person, or 1b) with
intent to gratify sexual desires, exposes his genitals or causes the victim to expose his or
her genitals, and 2) the victim is younger than 17. 

 Under section 22.021, a person can also commit aggravated sexual assault by
causing their sexual organ to contact the sexual organ of another. Tex. Pen Code Ann.
§ 22.021(a)(B)(iii) (Vernon 1994). Had the State alleged both means of committing
aggravated sexual assault, a dispute on the issue of penetration would not implicate the
lesser-included offense of indecency with a child. However, here, the State's decision to
allege on specific means of committing the greater offense limits it to obtaining a conviction
based on evidence of the conduct alleged. See Jacob v. State, 892 S.W.2d 905, 907
(Tex.Crim.App. 1995). Thus, under these facts, the element that distinguishes the offense
actually charged here from a lesser-included offense of indecency with a child is that of
penetration.

 As the Jiminez court noted, to be entitled to a lesser offense charge, there must be
evidence that affirmatively rebuts or negates an element of the greater offense. To satisfy
that test, appellant points to the testimony of the State's expert witnesses. Dr. Cliff Mishaw
said he performed an examination of AH and found no physical or psychological evidence
establishing or disproving sexual abuse. State's witness Dr. Margaret McNeese, who had
not examined AH, gave her expert opinion on the occurrence or non-occurrence of
physical evidence of penetration. She described a study involving female children whose
penetration had been established by admission or direct eyewitness testimony. In that
study, 70 percent of the children did not exhibit physical evidence of penetration.

 Appellant argues that the testimony of these two witnesses showed at least a 30
percent margin for error, which, he reasons, "raises a substantial question on the issue of
penetration." We disagree with that characterization of the evidence and that conclusion. 
The experts' testimony does not show that physical examinations have a significant margin
of error, but rather that a "normal" examination, namely, one that does not show evidence
of penetration, is of limited probative value. Here, there was direct evidence by AH of
penetration. The experts' testimony was to the effect that the absence of physical
evidence does not disprove penetration. Consequently, that evidence did not affirmatively
rebut or negate an element (penetration) of the greater offense. Jiminez, 953 S.W.2d at
299. That being true, appellant was not entitled to an instruction on the lesser-included
offense of indecency with a child. Appellant's second issue is overruled.

 In sum, both of appellant's issues are overruled and the judgment of the trial court
is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 2002). 
2. Appellant, in his brief, repeatedly states there was no outcry. However, the record
is unequivocal otherwise. Angelina testified:


 A: . . . I pushed him away and told him I was going to tell my mom.


* * *
 

 Q: Did you tell your mom?


 A: Yes, I did.


Her testimony concerning the second incident included this colloquy:


 A: I was getting the box from the shelf and as I was lifting my hand, he
grabbed my breast in front of my mom and my mom saw.

 

* * *


 Q: What did your mom do when she saw that?


 A: My mom said he was drunk. 

3. The statute expressly provides "compliance with the provisions of this Article is all
that is necessary to preserve for review the exceptions and objections presented to the
charge . . . ."



nd the existence of a breach regarding the contract with the
Zwanks. (7)

 Fraud and Conversion

 Regarding the allegations of fraud, Kemper attempted to defeat them via summary
judgment by stating that he personally was guilty of no acts or omissions constituting fraud. 
Given the context in which the ground was asserted, we read it as focusing upon the
purported independence of Groves. Due to that independence, Kemper apparently
believed that none of Groves' acts could be attributed to him, i.e. Kemper. (8) Evidence of
record creates a material issue of fact on the matter.

 As we stated while addressing the proceeding issue, a material issue of fact exists
regarding whether Kemper and Groves were involved in a principal / agent relationship. 
Assuming that a fact-finder were to lend credence to that evidence and conclude that such
a relationship indeed existed, then the principal (Kemper) would be responsible for the
acts of the agent (Groves) undertaken within the scope of the relationship. Hedley
Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 837 (Tex. App.--Amarillo 1993, writ
denied). And, because the Zwanks alleged that Groves uttered one or more
misrepresentations during the course of their transaction with him and Kemper may be
liable for same given the potential agency relationship, a material issue of fact exists
concerning whether Kemper was "guilty of any acts or omissions that would constitute
fraud . . . ." (9)

 Conversion

 Next, though indefinite and global, we read Kemper's attack upon the claim of
conversion to be founded on grounds similar to those levied against the claim of fraud. 
He apparently contends that since the Zwanks dealt exclusively with Groves, he (Kemper)
did nothing which could be construed as converting monies of the Zwanks. Thus, he was
supposedly entitled to summary judgment on the claim as a matter of law. We disagree.

 Much like the allegations regarding fraud, if Kemper and Groves were involved in
an agency relationship, then Groves' tortious acts are imputable to Kemper if done within
the scope of his authority. Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d at 837. 
And, there exists a material issue of fact concerning whether such an agency relationship
existed when Groves negotiated the sale of the Jeep to the Zwanks, as discussed under
the prior issues. So, summary judgment on the ground asserted was improper. (10) 

 Conspiracy

 Lastly, Kemper attempted to defeat the claim of conspiracy by alleging that there
was no evidence that he engaged in same. On appeal, the Zwanks argue that summary
judgment was improper because evidence indicated that Kemper and Groves conspired
to sell the Jeep to two different people. 

 To prove a civil conspiracy, the claimant must establish, among other things, that
the participants in the alleged conspiracy had a meeting of the minds on the object or
course of action. Abraham Inv. Co. v. Payne Ranch, Inc., 968 S.W.2d 518, 528 (Tex.
App.--Amarillo 1998, pet. denied). The Zwanks cite us to no direct or circumstantial
evidence from which one could reasonably infer or conclude that Kemper and Groves
agreed to sell the Jeep first to the Zwanks and then to Wholesale. 

 Nor are we cited to any evidence of record indicating that Kemper 1) specifically
intended to sell the vehicle to two separate parties at any time prior to the conveyance to
Wholesale or 2) knew of Groves efforts or intent to do so. See Firestone Steel Prod. Co.
v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996) (holding that civil conspiracy requires specific
intent and knowledge of the harm or the wrongful conduct at the beginning of the
combination or agreement). That evidence exists indicating that Kemper may have
received the proceeds does not fill the void. This is so because nothing suggests that
Kemper handled the check issued by the Zwanks. Nor does any evidence illustrate that
he knew the source of the funds contained in Groves' checking account or that the funds
used to pay the two checks issued him by Groves were monies originally transferred from
the Zwanks. Consequently, the Zwanks failed carry their burden of proof and present
some evidence on each element of their conspiracy claim. 

 Accordingly, we affirm the summary judgment to the extent that it denies recovery
upon the claim of civil conspiracy. However, we reverse it in all other respects and remand
the cause to the trial court for further proceedings.


 Brian Quinn

 Justice


Do not publish.

 


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. § 75.002(a)(1) (Vernon Supp. 2002).
2. Given the applicable standard of review, we interpret the evidence of record in a light most
favorable to the litigant's attempting to defeat the motion for summary judgment, i.e. the Zwanks. Miller v.
Galveston/Houston Diocese, 911 S.W.2d 897, 898-99 (Tex. App.- Amarillo 1995, no writ) (requiring the
court to interpret the summary judgment evidence in a light most favorable to the non-movants).
3. This left a balance in the account of $2,199.82.
4. As can be seen, the allegations do not comport with the requirements of Texas Rule of Civil
Procedure 166a(i). That is, Kemper's allegations of no evidence are global and do not specify "the elements
as to which there is no evidence." Such specificity is required according to Rule 166a(i). Yet, because the
Zwanks did not specially except to the allegations or otherwise complain of their form, we consider the
defects waived. 
5. That the Supreme Court referred to a master / servant relationship in speaking does not detract
from the applicability of Newspapers, Inc. to a principal / agent relationship. It also referred to the master
as a principal in the passage quoted. Newspapers, Inc. v. Love, 380 S.W.2d 582, 591-92 (Tex. 1964). The
reason for this may be best explained by allusion to the Restatement (Second) of Agency. There, we are
told that a "master is a species of principal, and a servant is a species of agent." Restatement (Second) of
Agency §2, comment a (1958). In other words, a master falls under the classification of a principal and a
servant under the classification of an agent, though not every agent may be a servant. Id. So, it would seem
that comments regarding the relationship of master /servant would be helpful in assessing the existence of
a principal / agent relationship.
6. To the extent that Kemper may have placed in issue the extent of Groves' authority to sell the Jeep,
we also note that a material question of fact exists as to that. Again, evidence indicates that 1) Kemper
authorized Groves to retain possession of the vehicle, 2) Groves previously sold vehicles for Kemper, 3)
Groves contacted Wholesale and negotiated the sale of the Jeep to it, 4) the Jeep was subsequently sold
to Wholesale, and 5) Kemper himself executed a draft on behalf of Wholesale obligating Wholesale to pay
Lynn's Auto for the vehicle. Groves contacting and negotiating the transfer to Wholesale when added to
Kemper's act of implicitly approving Groves' actions by his (Kemper's) executing the draft to secure payment
is some evidence indicating that Groves' authority included negotiating the sale of the vehicle for Kemper. 
See Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 837 (Tex. App.--Amarillo 1993, writ denied)
(reiterating the general rule that an agent's authority is presumed to be coextensive with the business
entrusted to his care).
7. A's negotiating the sale of a car to B, receiving the negotiated price from B, delivering the vehicle
to B, informing B that title is forthcoming, then transferring title and, hence, ownership of the car to C is some
evidence creating a material issue of fact concerning the existence of a breached contract. 
8. Again, we are relegated to interpreting the grounds uttered in Kemper's summary judgment motion
since they are very indefinite when tested against the standards of Rule 166a(i) and the Zwanks failed to
specially except to them.
9. We venture no opinion on whether the conduct of Groves constituted fraud. That was not the basis
of Kemper's summary judgment, according to our construction of the grounds he asserted. 
10. Since it was not raised below, we do not address whether the Zwanks had a viable claim for
conversion because monies were purportedly converted. See Estate of Townes v. Townes, 867 S.W.2d
414, 419 (Tex. App.--Houston [14th Dist.] 1993, writ denied) (holding that money is subject to conversion only
when it can be described or identified as a specific chattel and not where an indebtedness may be
discharged by the payment of money generally); Edlund v. Bounds, 842 S.W.2d 719, 727 (Tex. App.--Dallas
1992, writ denied) (holding the same).