NUMBER 13-09-00405-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

WILSON VANHOY,                                                                        Appellant, 

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 284th
District Court

of Montgomery County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Memorandum Opinion by
Justice Garza

 

            A jury found appellant,
Wilson Vanhoy, guilty of aggravated sexual assault of a child, see Tex. Penal Code Ann. §
22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2010), a first-degree felony
offense.  See id. § 22.021(e).  The jury assessed punishment at
thirty-nine years’ imprisonment and payment of a $5,000 fine.  By two issues,
appellant contends that the trial court erred by (1) including a definition of
“penetration” in the jury charge that lessened the State’s burden; and (2)
admitting certain hearsay statements made by the complainant.  We affirm.

I. 
Background[1]

            On April 18, 2008, the
thirteen-year-old complainant, J.H., went to spend the night at the home of her
friend, G.N.  G.N. and her mother lived in the downstairs floor of a duplex
apartment.  The upstairs residents were appellant’s father, Clayton Vanhoy, Clayton’s
fiancée, Trista Purcell, and Purcell’s four-year-old daughter.  Appellant, then
approximately twenty-eight years old, lived in a separate house located near
the duplex with his wife, Becky Linney,[2]
and their three children.

            On the evening of April
18, the adults from the three families were gathered outside, drinking and
socializing at a “goodbye” party; the property owner had recently sold the
property, and all of the families were required to move.  J.H. testified that
after her friend had gone to sleep, she was watching television with one of the
younger children.  Appellant came into the apartment with a young boy who
wanted to play with the other children.  J.H. testified that while the children
were playing, appellant “french-kissed” her and put his hand inside her shorts
and touched her “vaginal area.”  J.H. stated that she returned the kiss. 
Appellant then returned to the party, leaving J.H. with the two young
children.  

Around 10:00 or 11:00 p.m., appellant
returned to the apartment.  The two young children asked to return to
appellant’s home and left.  According to J.H., she closed the front door after
appellant told her to do so.  Appellant sat next to J.H. on the sofa and began
kissing her.  J.H. testified that appellant made her sit on his lap, facing and
straddling him as he kissed her.  Appellant moved J.H. to the end of the sofa,
with her back against the arm of the sofa.  Appellant knelt to the floor and
touched J.H. “inside the vaginal lip area” with his fingers and with his mouth. 
Although J.H. told appellant to stop more than once, he did not do so.  J.H.
also testified that appellant unzipped his pants and told her to “take it out,”
but she refused.  At this point, Becky and Trista came in the front door. 
Appellant stood up.  J.H. stated that Becky appeared to be “mad” and that she
threw her drink on appellant.  J.H. went into G.N.’s bedroom, followed by Becky
and Trista.  They questioned J.H., and she told them what had occurred.  J.H.
was later informed that the police had been called.  J.H. provided a written
statement.  Later that evening, J.H. was taken home by the police.  Four days
later, a sexual assault nurse examiner completed an examination of J.H.

Trista testified that at some point
during the evening, Becky was looking for appellant.  Trista and Becky walked
over to G.N.’s apartment, opened the door, and walked in.  Trista entered the
room first.  She saw J.H. on the sofa with her legs “spread apart” and “a
little in the air”; appellant was kneeling in front of her.  When Trista and
Becky questioned J.H. in G.N.’s bedroom about what happened, J.H. said that
appellant “stuck his finger in her vagina.”  

Becky testified that when she walked
in behind Trista, she saw J.H. on the sofa and appellant “crouched down” in
front of her.  Appellant’s hands were on each side of J.H. and he was “pushing
himself up.”  The prosecutor asked Becky if she heard J.H. say that appellant
had “fingered” her.  Defense counsel objected on the basis of hearsay.  The
trial court overruled the objection, and Becky answered, “yes.”  

Karen Trevino, a sexual assault nurse
examiner at the Children’s Safe Harbor in Montgomery County, testified from her
examination report of J.H.[3] 
In the report, J.H. stated that appellant touched her on her “boobs, va-jj,
[and her] butt” with his face and fingers.  Trevino testified that she had previously
heard the term “va-jj” to refer to vagina.  According to Trevino, J.H. reported
that appellant “put his fingers on her vagina” and his “mouth on her vagina.”

Appellant did not testify.  In his
written statement, however, which was admitted in evidence, he explained that
he was “kicked in the knee and fell as a joke” and that his wife, Becky,
“thought [he] was between [J.H.’s] legs.”

II.  Charge Error

By his first issue, appellant contends
that the trial court erred in submitting an erroneous definition of
“penetration” to the jury.  Appellant argues that:  (1) the erroneous
definition lessened the State’s burden; and (2) by submitting any
definition of “penetration,” the trial court impermissibly commented on the
evidence.  

A.  
Standard
of Review and Applicable Law

In analyzing a jury
charge issue, our initial inquiry is whether error exists in the charge
submitted to the jury.  Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim.
App. 2005) (en banc).  If error is found, the degree of harm necessary for
reversal depends on whether the appellant preserved the error by objection.  Id.
 If the defendant properly objected to the erroneous jury charge, reversal is
required if we find “some harm” to the defendant's rights.  Id.  If the
defendant failed to object or stated that he has no objection to the charge, reversal
is required only if the record shows “egregious harm” to the defendant.  Id.
at 743–44.  

Here, appellant stated
his objection to the definition of penetration in the charge as follows:  “The
defense objects in paragraph 2 to the definition of penetration included in the
charge.”  Defense counsel did not state the basis of his objection to the
definition.  On appeal, appellant argues that the definition of penetration
submitted in the charge (1) lessened the State’s burden and (2) constituted a
comment on the evidence.  Neither argument was made to the trial court. 
Because appellant failed to “distinctly specify” the ground of his objection to
the charge, we conclude that the issue should be resolved as if there was no
objection.  See Mays v. State, 318 S.W.3d 368, 385 n.53 (Tex. Crim. App.
2010) (noting that article 36.14 of code of criminal procedure requires a
defendant who objects to jury charge to “distinctly specify” the ground or
basis of his objection); Hall v. State, 283 S.W.3d 137, 160 (Tex.
App.—Austin 2009, pet. ref’d) (“To preserve a complaint of charge error, Hall
was required to ‘distinctly specify each ground of objection’ in a manner ‘specific
and clear enough to apprise the trial court of the nature of the objection.’”)
(quoting Pennington v. State, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985));
Reyes v. State, 910 S.W.2d 585, 592–93 (Tex. App.—Amarillo 1995, pet.
ref’d) (holding nothing presented for review where objection to charge is not
specific enough); see Tex. Code
Crim. Proc. Ann. art. 36.14 (West 2007) (“Before said charge is read to
the jury, the defendant or his counsel shall have a reasonable time to examine
the same and he shall present his objections thereto in writing, distinctly
specifying each ground of objection.”) (emphasis added).  Accordingly,
because appellant failed to distinctly specify his grounds of objection to the
charge, we may only reverse if the record shows egregious harm.  See Ngo,
175 S.W.3d at 743–44. 

To determine whether
a defendant suffered egregious harm, we assess the degree of harm in light of
(1) the entire jury charge, (2) the state of the evidence, including contested
issues, (3) the arguments of counsel, and (4) any other relevant information in
the record.  Warner v. State, 245 S.W.3d 458, 461 (Tex. Crim. App.
2008); see Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985)
(op. on reh'g).  Errors that result in egregious harm are those that affect “the
very basis of the case,” “deprive the defendant of a valuable right,” or “vitally
affect a defensive theory.”  See Warner, 245 S.W.3d at 461–62.

B.  
  Discussion

The charge contained
the following definition of “penetration”:  “‘Penetration’ means contact with
the female sexual organ which would reasonably be regarded as more intrusive
than contact with the outer vaginal area.”  Appellant first argues that this
definition of penetration “was wrong.”  In Karnes v. State, 873 S.W.2d
92, 96 (Tex. App.—Dallas 1994, no pet.), the Dallas Court of Appeals, citing Vernon
v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992), defined penetration
as follows:  “Penetration, within the meaning of section 22.021 of the penal
code, occurs so long as contact with the female sexual organ could reasonably
be regarded by ordinary English speakers as more intrusive than contact with
outer vaginal lips. . . .  Touching beneath the fold of the external genitalia
amounts to penetration within the meaning of the aggravated sexual assault
statute.”  Karnes, 873 S.W.2d at 96 (citations omitted).  Appellant
argues that “[t]he jury instructions in the present case altered the language
of Vernon and Karnes to make it more favorable to the State.” 
The instruction in the present case substituted “outer vaginal area” for
“outer vaginal lips.”  Appellant argues that “outer vaginal lips”
defines a precise anatomical area, whereas “outer vaginal area” is vague and
undefined.  Thus, according to appellant, the instruction permitted the jury to
find penetration based on contact with the outer vaginal lips, instead of
requiring contact “more intrusive than” such contact.  

Appellant also argues
that the instruction in the present case substituted “regarded” for “regarded
by ordinary English speakers,” see id., thereby transforming “a precise
objective test” into “a very subjective test.”  Finally, appellant argues that
because “penetration” is not defined in the penal code, the trial court erred
in submitting any instruction defining the term.  Appellant argues that
even if the definition had correctly stated the law, it nonetheless constituted
an improper comment on the evidence.  

Assuming, without
deciding, that the jury charge erroneously submitted a definition of
“penetration” that lessened the State’s burden of proof and improperly
commented on the evidence, we still conclude that appellant was not egregiously
harmed by the error.  By testifying that appellant touched her with his fingers
“inside the vaginal lip area,” J.H. testified that the necessary penetration
had occurred.  See id.  Trista testified that J.H. told her that
appellant “stuck his finger in her vagina.”  The State did not emphasize or
discuss penetration during its closing argument.  See Almanza, 686
S.W.2d at 171 (providing that the arguments of counsel are a factor when
determining harm).  In his closing argument, appellant’s counsel did not
discuss penetration.  Instead, he emphasized that when Becky and Trista entered
the apartment, they only saw appellant “on his knees crouched on the ground in
front of [J.H.].”  He also cast doubt on the “time frame,” arguing that
appellant did not have time to sexually assault J.H. in the “less than five
minutes” he was in the apartment with J.H. before Becky and Trista arrived. 
Thus, we conclude that appellant has not shown that he suffered the sort of
harm that affected the very basis of his case, deprived him of a valuable
right, or vitally affected a defensive theory.  See Warner, 245 S.W.3d
at 461–62.  We overrule appellant’s first issue. 

III.  Hearsay Evidence

By his second issue,
appellant complains that the trial court erred in admitting hearsay statements
made by J.H., which were included on page five of Trevino’s sexual assault
examination report of J.H.  At trial, the State argued that J.H.’s statements
to Trevino were admissible as an exception to the hearsay rule under Texas Rule
of Evidence 803(4).  See Tex. R.
Evid. 803(4) (providing that hearsay statements meeting the following
criteria are not excluded by the hearsay rule:  “Statements made for purposes
of medical diagnosis or treatment and describing medical history, or past or
present symptoms, pain, or sensations, or the inception or general character of
the cause or external source thereof insofar as reasonably pertinent to
diagnosis or treatment”).  Appellant contends that J.H.’s statements to Trevino
did not qualify as an exception to the hearsay rule under rule 803(4) because
the examination of J.H. was not for the purpose of diagnosis or treatment.

A.  
 Standard
of Review and Applicable Law

            We review
a trial court's decision to admit evidence for an abuse of discretion. Shuffield
v. State, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).  A trial court abuses
its discretion only if its decision is “so clearly wrong as to lie outside the
zone within which reasonable people might disagree.”  Taylor v. State,
268 S.W.3d 571, 579 (Tex. Crim. App. 2008).  If the trial court's decision is
correct on any theory of law applicable to the case, we will uphold the
decision.  De La Paz v. State, 279 S.W.3d 336, 344 (Tex. Crim. App.
2009).  Furthermore, improper admission of evidence is harmless if the same or
similar evidence is admitted without objection at another point in the trial.  See
Estrada v. State, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting
that any preserved error with respect to admission of complained-of evidence
was harmless in light of “very similar” evidence admitted without objection); Prieto
v. State, 337 S.W.3d 918, 922 (Tex. App.—Amarillo 2011, no pet) (citing Coble
v. State, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010)). 

For statements to be admissible under Rule
803(4), the proponent of the evidence must show that (1) the declarant was
aware that the statements were made for the purposes of medical diagnosis or
treatment and that proper diagnosis or treatment depended on the veracity of
the statement and (2) the particular statement offered is also ‘pertinent to
treatment,’ that is, it was reasonable for the health care provider to rely on
the particular information in treating the declarant. 

 

Prieto, 337 S.W.3d at 921
(citing Taylor, 268 S.W.3d at 589, 591; Mbugua v. State, 312
S.W.3d 657, 670–71 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d)).

B.  
 Discussion

            Page five
of Trevino’s report contains J.H.’s statements that appellant touched her on
her “boobs, va-jj” and “butt” with his face and fingers.  Even assuming that
the trial court erred in admitting J.H.’s statements to Trevino under the
exception in rule 803(4), we conclude that any such error was harmless
because:  (1) J.H. herself testified without objection that appellant touched
her with his fingers “inside the vaginal lip area”; and (2) “very similar”
evidence was admitted without objection by Trista’s testimony that J.H. told
her that appellant “stuck his finger in her vagina.”  See Estrada, 313
S.W.3d at 302 n.29.  We overrule appellant’s second issue. 

IV. 
Conclusion

            We affirm the
trial court’s judgment.

 

 

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

18th
day of August, 2011.









[1]
This case is before the Court on transfer from the Ninth Court of Appeals in
Beaumont pursuant to an order issued by the Supreme Court of Texas.  See Tex. Gov’t Code Ann. § 73.001 (West
2005). 

 





[2]
Becky Linney testified that she and appellant are not legally married, but they
have three children together and she refers to him as her “husband.”  





[3]
Defense counsel objected to the admission of State’s Exhibit No. 9, Trevino’s
report, on the basis of hearsay.  The trial court overruled the objection and
admitted the report.  The trial court’s decision to admit the report, which
contained statements made by J.H., is the subject of appellant’s second issue,
discussed below.