

# NUMBER 13-09-00405-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**WILSON VANHOY,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 284th District Court
of Montgomery County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

A jury found appellant, Wilson Vanhoy, guilty of aggravated sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2010), a first-degree felony offense. *See id.* § 22.021(e). The jury assessed punishment at thirty-nine years' imprisonment and payment of a $5,000 fine. By two issues, appellant contends that the trial court erred by (1) including a definition of "penetration" in the jury

charge that lessened the State's burden; and (2) admitting certain hearsay statements made by the complainant. We affirm.

## I. BACKGROUND[1]

On April 18, 2008, the thirteen-year-old complainant, J.H., went to spend the night at the home of her friend, G.N. G.N. and her mother lived in the downstairs floor of a duplex apartment. The upstairs residents were appellant's father, Clayton Vanhoy, Clayton's fiancée, Trista Purcell, and Purcell's four-year-old daughter. Appellant, then approximately twenty-eight years old, lived in a separate house located near the duplex with his wife, Becky Linney,[2] and their three children.

On the evening of April 18, the adults from the three families were gathered outside, drinking and socializing at a "goodbye" party; the property owner had recently sold the property, and all of the families were required to move. J.H. testified that after her friend had gone to sleep, she was watching television with one of the younger children. Appellant came into the apartment with a young boy who wanted to play with the other children. J.H. testified that while the children were playing, appellant "french-kissed" her and put his hand inside her shorts and touched her "vaginal area." J.H. stated that she returned the kiss. Appellant then returned to the party, leaving J.H. with the two young children.

Around 10:00 or 11:00 p.m., appellant returned to the apartment. The two young children asked to return to appellant's home and left. According to J.H., she closed the front door after appellant told her to do so. Appellant sat next to J.H. on the sofa and

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Becky Linney testified that she and appellant are not legally married, but they have three children together and she refers to him as her "husband."

2

began kissing her. J.H. testified that appellant made her sit on his lap, facing and straddling him as he kissed her. Appellant moved J.H. to the end of the sofa, with her back against the arm of the sofa. Appellant knelt to the floor and touched J.H. "inside the vaginal lip area" with his fingers and with his mouth. Although J.H. told appellant to stop more than once, he did not do so. J.H. also testified that appellant unzipped his pants and told her to "take it out," but she refused. At this point, Becky and Trista came in the front door. Appellant stood up. J.H. stated that Becky appeared to be "mad" and that she threw her drink on appellant. J.H. went into G.N.'s bedroom, followed by Becky and Trista. They questioned J.H., and she told them what had occurred. J.H. was later informed that the police had been called. J.H. provided a written statement. Later that evening, J.H. was taken home by the police. Four days later, a sexual assault nurse examiner completed an examination of J.H.

Trista testified that at some point during the evening, Becky was looking for appellant. Trista and Becky walked over to G.N.'s apartment, opened the door, and walked in. Trista entered the room first. She saw J.H. on the sofa with her legs "spread apart" and "a little in the air"; appellant was kneeling in front of her. When Trista and Becky questioned J.H. in G.N.'s bedroom about what happened, J.H. said that appellant "stuck his finger in her vagina."

Becky testified that when she walked in behind Trista, she saw J.H. on the sofa and appellant "crouched down" in front of her. Appellant's hands were on each side of J.H. and he was "pushing himself up." The prosecutor asked Becky if she heard J.H. say that appellant had "fingered" her. Defense counsel objected on the basis of hearsay. The trial court overruled the objection, and Becky answered, "yes."

3

Karen Trevino, a sexual assault nurse examiner at the Children's Safe Harbor in Montgomery County, testified from her examination report of J.H.[3] In the report, J.H. stated that appellant touched her on her "boobs, va-jj, [and her] butt" with his face and fingers. Trevino testified that she had previously heard the term "va-jj" to refer to vagina. According to Trevino, J.H. reported that appellant "put his fingers on her vagina" and his "mouth on her vagina."

Appellant did not testify. In his written statement, however, which was admitted in evidence, he explained that he was "kicked in the knee and fell as a joke" and that his wife, Becky, "thought [he] was between [J.H.'s] legs."

## II. CHARGE ERROR

By his first issue, appellant contends that the trial court erred in submitting an erroneous definition of "penetration" to the jury. Appellant argues that: (1) the erroneous definition lessened the State's burden; and (2) by submitting *any* definition of "penetration," the trial court impermissibly commented on the evidence.

### A. Standard of Review and Applicable Law

In analyzing a jury charge issue, our initial inquiry is whether error exists in the charge submitted to the jury. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If error is found, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.* If the defendant properly objected to the erroneous jury charge, reversal is required if we find "some harm" to the defendant's rights. *Id.* If the defendant failed to object or stated that he has no

---

[3] Defense counsel objected to the admission of State's Exhibit No. 9, Trevino's report, on the basis of hearsay. The trial court overruled the objection and admitted the report. The trial court's decision to admit the report, which contained statements made by J.H., is the subject of appellant's second issue, discussed below.

objection to the charge, reversal is required only if the record shows "egregious harm" to the defendant. *Id.* at 743–44.

Here, appellant stated his objection to the definition of penetration in the charge as follows: "The defense objects in paragraph 2 to the definition of penetration included in the charge." Defense counsel did not state the basis of his objection to the definition. On appeal, appellant argues that the definition of penetration submitted in the charge (1) lessened the State's burden and (2) constituted a comment on the evidence. Neither argument was made to the trial court. Because appellant failed to "distinctly specify" the ground of his objection to the charge, we conclude that the issue should be resolved as if there was no objection. *See Mays v. State*, 318 S.W.3d 368, 385 n.53 (Tex. Crim. App. 2010) (noting that article 36.14 of code of criminal procedure requires a defendant who objects to jury charge to "distinctly specify" the ground or basis of his objection); *Hall v. State*, 283 S.W.3d 137, 160 (Tex. App.—Austin 2009, pet. ref'd) ("To preserve a complaint of charge error, Hall was required to 'distinctly specify each ground of objection' in a manner 'specific and clear enough to apprise the trial court of the nature of the objection.'") (quoting *Pennington v. State*, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985)); *Reyes v. State*, 910 S.W.2d 585, 592–93 (Tex. App.—Amarillo 1995, pet. ref'd) (holding nothing presented for review where objection to charge is not specific enough); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) ("Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, *distinctly specifying* each ground of objection.") (emphasis added). Accordingly, because appellant failed to distinctly specify his grounds of objection to the charge, we may only reverse if the

record shows egregious harm. *See Ngo*, 175 S.W.3d at 743–44.

To determine whether a defendant suffered egregious harm, we assess the degree of harm in light of (1) the entire jury charge, (2) the state of the evidence, including contested issues, (3) the arguments of counsel, and (4) any other relevant information in the record. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008); *see Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh'g). Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *See Warner*, 245 S.W.3d at 461–62.

## B. Discussion

The charge contained the following definition of "penetration": "'Penetration' means contact with the female sexual organ which would reasonably be regarded as more intrusive than contact with the outer vaginal area." Appellant first argues that this definition of penetration "was wrong." In *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.), the Dallas Court of Appeals, citing *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992), defined penetration as follows: "Penetration, within the meaning of section 22.021 of the penal code, occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with outer vaginal lips. . . . Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute." *Karnes*, 873 S.W.2d at 96 (citations omitted). Appellant argues that "[t]he jury instructions in the present case altered the language of *Vernon* and *Karnes* to make it more favorable to the State." The instruction in the present case substituted

6

"outer vaginal *area*" for "outer vaginal *lips*." Appellant argues that "outer vaginal lips" defines a precise anatomical area, whereas "outer vaginal area" is vague and undefined. Thus, according to appellant, the instruction permitted the jury to find penetration based on contact with the outer vaginal lips, instead of requiring contact "more intrusive than" such contact.

Appellant also argues that the instruction in the present case substituted "regarded" for "regarded by ordinary English speakers," *see id.*, thereby transforming "a precise objective test" into "a very subjective test." Finally, appellant argues that because "penetration" is not defined in the penal code, the trial court erred in submitting *any* instruction defining the term. Appellant argues that even if the definition had correctly stated the law, it nonetheless constituted an improper comment on the evidence.

Assuming, without deciding, that the jury charge erroneously submitted a definition of "penetration" that lessened the State's burden of proof and improperly commented on the evidence, we still conclude that appellant was not egregiously harmed by the error. By testifying that appellant touched her with his fingers "inside the vaginal lip area," J.H. testified that the necessary penetration had occurred. *See id.* Trista testified that J.H. told her that appellant "stuck his finger in her vagina." The State did not emphasize or discuss penetration during its closing argument. *See Almanza*, 686 S.W.2d at 171 (providing that the arguments of counsel are a factor when determining harm). In his closing argument, appellant's counsel did not discuss penetration. Instead, he emphasized that when Becky and Trista entered the apartment, they only saw appellant "on his knees crouched on the ground in front of

7

[J.H.]." He also cast doubt on the "time frame," arguing that appellant did not have time to sexually assault J.H. in the "less than five minutes" he was in the apartment with J.H. before Becky and Trista arrived. Thus, we conclude that appellant has not shown that he suffered the sort of harm that affected the very basis of his case, deprived him of a valuable right, or vitally affected a defensive theory. *See Warner*, 245 S.W.3d at 461– 62. We overrule appellant's first issue.

### III. HEARSAY EVIDENCE

By his second issue, appellant complains that the trial court erred in admitting hearsay statements made by J.H., which were included on page five of Trevino's sexual assault examination report of J.H. At trial, the State argued that J.H.'s statements to Trevino were admissible as an exception to the hearsay rule under Texas Rule of Evidence 803(4). *See* TEX. R. EVID. 803(4) (providing that hearsay statements meeting the following criteria are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment"). Appellant contends that J.H.'s statements to Trevino did not qualify as an exception to the hearsay rule under rule 803(4) because the examination of J.H. was not for the purpose of diagnosis or treatment.

#### A. Standard of Review and Applicable Law

We review a trial court's decision to admit evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which

8

reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Furthermore, improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting that any preserved error with respect to admission of complained-of evidence was harmless in light of "very similar" evidence admitted without objection); *Prieto v. State*, 337 S.W.3d 918, 922 (Tex. App.—Amarillo 2011, no pet) (citing *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010)).

> For statements to be admissible under Rule 803(4), the proponent of the evidence must show that (1) the declarant was aware that the statements were made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended on the veracity of the statement and (2) the particular statement offered is also 'pertinent to treatment,' that is, it was reasonable for the health care provider to rely on the particular information in treating the declarant.

*Prieto*, 337 S.W.3d at 921 (citing *Taylor*, 268 S.W.3d at 589, 591; *Mbugua v. State*, 312 S.W.3d 657, 670–71 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)).

## B. Discussion

Page five of Trevino's report contains J.H.'s statements that appellant touched her on her "boobs, va-jj" and "butt" with his face and fingers. Even assuming that the trial court erred in admitting J.H.'s statements to Trevino under the exception in rule 803(4), we conclude that any such error was harmless because: (1) J.H. herself testified without objection that appellant touched her with his fingers "inside the vaginal lip area"; and (2) "very similar" evidence was admitted without objection by Trista's

9

testimony that J.H. told her that appellant "stuck his finger in her vagina." *See Estrada*, 313 S.W.3d at 302 n.29. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
18th day of August, 2011.